**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD G. SMITH,

    Plaintiff,

       v.

BOROUGH OF DUNMORE, BOROUGH
OF DUNMORE COUNCIL, and JOSEPH
LOFTUS, THOMAS HENNIGAN,
JOSEPH TALUTTO, FRANK PADULA,
LEONARD VERRASTRO, and MICHAEL
CUMMINGS, *individually and as
Councilmen*,

    Defendants.

NO. 3:05-CV-1343

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  (Doc. 31.)  For the reasons set forth below, Defendants' motion for summary judgment will be granted in part and denied in part.

Since a federal question is before the Court pursuant to 42 U.S.C. § 1983, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  The Court also has supplemental jurisdiction over Plaintiff's tort claims pursuant to 28 U.S.C. § 1367(a).

## BACKGROUND

Plaintiff Edward G. Smith was employed, at all times relative to this case, as a Captain with the Borough of Dunmore Fire Department.  The Borough of Dunmore and Local Union No. 860 of the International Association of Fire Fighters, AFL-CIO (of which Plaintiff is a member), are subject to a Collective Bargaining Agreement ("CBA").  Smith

has been a full-time firefighter with the Borough since January 1, 1988.  (No. 05-1343,
Doc. 33-2.)

Via letter of May 20, 2005, the Borough of Dunmore Council ("Borough Council")
requested from the Borough Fire Chief, Vince Arnone, a memo outlining the necessary
qualifications and certifications for full-time work in the Fire Department.  This letter also
requested that Chief Arnone provide documentation that each full-time (and active
reserve) firefighter had met these qualifications and certifications.  (No. 05-1343, Doc. 33-
3.)  In response, Chief Arnone provided to the Borough Council (at the attention of the
Borough Manager, Joseph Loftus), via letter of May 23, 2005, a list of five certifications
required of all full-time firefighters.  These certifications included "Essentials of
Firefighting (Pa. State Fire Academy or equivalent)" and "Emergency Medical Technician
(after May 1st, 1988 hire)".  (No. 05-1343, Doc. 33-4.)  Along with this list of requisite
certifications, Chief Arnone provided the Borough Council with copies of all of the full-time
firefighters' personnel files.  (*Id.*)  On June 28, 2005, the Borough Council, by Mr. Loftus,
sent a letter to Chief Arnone stating that after reviewing the training and qualification
statements that Chief Arnone had provided, it was revealed that the Plaintiff had "not
completed two weeks of training at the Fire Academy", and stated that Mr. Smith would
be "suspended from the schedule, with pay" pending a Borough Council hearing
scheduled for July 6, 2005, eight days later.  (No. 05-1343, Doc. 25.)

On June 30, 2005, the Scranton Times-Tribune ran a story with the headline
"Firefighters suspended for not completing required training."  (No. 05-1342, Doc. 32-14.)
The author of the article had secured a copy of the letter from Mr. Loftus to Chief Arnone,
but how the writer obtained the letter is in dispute.  On July 5, 2005, Plaintiff filed the

2

present action.  The following day, the Borough Council met and determined that Plaintiff did satisfy the certification requirements under the CBA because he was 'grand-fathered in' due to his hire date, and therefore reinstated him to the work schedule.  Plaintiff's suspension lasted from June 28 to July 6, 2005, and did not result in any loss of pay or seniority.  On July 7, 2005, the Scranton-Times ran another article under the heading "Dunmore firefighters reinstated".  (No. 05-1342, Doc. 32-15.)

In his Complaint, Plaintiff alleges that after the filing of the initial action, he was speaking with Councilman-Defendant Talutto about his pending motion for early retirement, and Talutto told him that he would not vote in favor of him because Smith was suing him.  (No. 05-1343, Doc. 23-1, Plaintiff's Amended Compl. ¶ 40.)  It is of note, however, that in his deposition, Smith describes this exchange as having occurred with Councilman-Defendant Verrastro, not with Talutto.  (Smith Dep. 42:9-11.)

On September 1, 2006, Plaintiff filed an amended complaint (hereinafter "Complaint").  (No. 05-1343, Doc. 23-1.)  Defendants filed an answer on September 5, 2006.  (No. 05-1343, Doc. 24.)  On September 20, 2006, Defendants filed the present motion for summary judgment.  (No. 05-1343, Doc. 31.)

This motion is fully briefed and ripe for disposition.


**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its

3

existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

4

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

Plaintiff's Complaint (No. 05-1343, Doc. 23-1) brings suit under 42 U.S.C. § 1983 for alleged violations of his civil rights pursuant to the First, Fifth[1] and Fourteenth Amendments to the United States Constitution.  Plaintiff's Count I alleges a violation of his constitutional rights due to his suspension from employment without being first provided with notice and an opportunity to be heard, thereby depriving him of a property interest without due process in violation of the Fourteenth Amendment.  This Count also alleges a violation of Plaintiff's right to be free from injury to his reputation.  Count V alleges a violation of Plaintiff's First Amendment right to free speech, and Count VI alleges a First Amendment violation in that some of the named Defendants allegedly retaliated against Plaintiff for filing the present lawsuit.  The remainder of Plaintiff's counts are tort claims under state law.  Count II alleges that Defendants invaded his privacy by intentionally making statements which placed Plaintiff before the public in a false light.

---

[1] Plaintiff's Complaint cites the First, Fourth, and Fourteenth Amendments, but the Court will assume that this mention of the Fourth Amendment was in error.  The Fourth Amendment protects against unlawful searches and seizures, but there are no allegations in the Complaint that any Fourth Amendment violation occurred.  The Fifth Amendment, however, is often raised in conjunction with a cause of action under the Fourteenth Amendment, which makes the Fifth Amendment's due process protections applicable to the States.

Count III alleges defamation against Defendants for publishing in a Council meeting publication, causing a story to later be published in a local newspaper, that Plaintiff had failed to complete required training and was therefore suspended from employment. Count IV alleges that Defendants' acts invaded his privacy by giving publicity to the private life of Plaintiff.

### A.  Plaintiff's Federal Claims under 42 U.S.C. § 1983

Plaintiff's Count I alleges that Defendants deprived him of a property interest without due process in violation of the Fifth Amendment, which is made applicable to the States by the Fourteenth Amendment.  This Count also alleges a violation of Plaintiff's right to be free from injury to his reputation.  Count V alleges that Defendants retaliated against Plaintiff for exercising his First Amendment right to petition the courts for a redress of grievances.  This Count also alleges that Defendants chose to suspend Plaintiff for exercising his First Amendment free speech rights.

### i. Due Process Claims

In order to state a claim for a violation of procedural due process, a plaintiff must show: (1) a constitutionally protected interest in life, liberty, or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation.  *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). If Plaintiff fails to establish any one of these elements, his claim may not survive. Defendants have moved for summary judgment, claiming that Plaintiff cannot show that he was deprived of a constitutionally protected interest in his property or liberty as a result

6

of Defendants' acts.

Reputation alone is not an interest protected by the due process clause.  *Versarge v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1371 (3d Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976)).[2]  In *Kutztown*, the Third Circuit Court of Appeals opined that in order "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  455 F.3d 225, 236 (2006) (emphasis in original) (citations omitted).  This is referred to as the "stigma-plus" test.

In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest.  *Codd v. Velger*, 429 U.S. 624, 628 (1977).  The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."  *Kutztown*, 455 F.3d at 236.

In the present case, we need not consider whether Defendants' actions satisfy the "stigma" prong, since Plaintiff was never terminated, and therefore cannot satisfy the "plus" prong.  The Third Circuit Court of Appeals has, in several cases, held that the deprivation a plaintiff suffered along with stigma to his reputation was not sufficiently weighty to satisfy the "plus" requirement, because the plaintiff in each case did not lose

---

[2] According to the United States Supreme Court, damage to the reputation alone is best vindicated with a state defamation claim.  *Paul*, 424 U.S. at 712.  We recognize, however, that state law immunity doctrines often prevent such claims from being brought against government actors.  *See, e.g., Lindner v. Mollan*, 677 A.2d 1194, 1195-96 (Pa. 1996) (doctrine of absolute privilege exempts a high public official from all civil suits for damages arising out of false defamatory statements provided the statements are made in the course of the official's duties or powers and within the scope of his authority).  *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 n.14 (3d Cir. 2006).  See the discussion of absolute immunity, infra p. ?.

his job, and instead complained about some adverse employment action less drastic than discharge.  *See Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 492 (1998) (plaintiff was suspended with pay, but was not fired); *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073,1077-78 (1997) (plaintiff was reprimanded and disciplined, but was never suspended, removed, fined or reduced in rank); *Clark v. Twp. of Falls*, 890 F.2d 611, 617-20 (1989) (plaintiff's duties were changed, but he did not lose his job, and neither his grade nor his pay was lowered); *Robb v. City of Phila.*, 733 F.2d 286, 294 (1984) (plaintiff was transferred and denied a promotion, but remained employed by the City of Philadelphia at the same classification level and pay scale that he had previously had). *See also Versarge*, 984 F.2d at 1370-71 (plaintiff lost job as firefighter, but job was only a volunteer position to begin with).  *Kutztown*, 455 F.3d at 238.

Plaintiff's allegations–that his suspension with pay for a period of approximately eight days while the Borough examined his qualifications as a firefighter both deprived him of a property interest in reporting to work, and resulted in him being stigmatized in connection with this suspension (an alleged deprivation of a liberty interest)–are insufficient to state a § 1983 claim against Defendants for a violation of due process. Under this factual scenario, neither the alleged property or liberty interest rises to the level of a fundamental right.  Accordingly, Defendants' motion for summary judgment on the due process claims will be granted.

### ii.  First Amendment Retaliation Claims

In Count V, Plaintiff brings a cause of action under the First Amendment Free Speech Clause against all Defendants, alleging that Mr. Smith engaged in speech of

8

public concern when he discussed previous pension distribution calculations, and in retaliation therefor was wrongfully suspended and defamed.  However, the record is completely devoid of any support for this allegation.  Plaintiff was temporarily suspended from the work schedule–with pay–for a period of eight days, immediately after the Borough Council reviewed his personnel file and found that he lacked what they felt to be the requisite certifications.  After the hearing of July 6, 2005, Plaintiff was immediately returned to the schedule with no loss of pay, seniority, or rank.  Plaintiff has failed to establish a prima facie claim of retaliation because he has failed to allege any causal link between his suspension and his earlier comments with respect to pension distribution calculations.  Defendants have provided a legitimate reason for the temporary suspension, and nothing in the record rebuts this proffered reason.  *See, e.g., Cobb v. Phila. Gas Works*, 118 Fed. Appx. 584 (3d Cir. 2004).  Accordingly, Defendants' summary judgment motion as to this Count will be granted.

In Count VI, Plaintiff brings a cause of action under the First Amendment Petition Clause against the Borough and Councilman Talutto for retaliation against his right to petition the courts for a redress of grievances in bringing the present action.

Plaintiff's Complaint alleges that, after filing this lawsuit, he was discussing his motion for early retirement with Councilman-Defendant Talutto, and that Talutto responded by telling Smith he would not vote in favor of him because Smith was suing him.  (Compl. ¶ 40.)  It is of note, however, that in his deposition, Smith describes this exchange as having occurred with Councilman-Defendant Verrastro, not with Talutto.  (Smith Dep. 42:9-11.)  The Court will grant leave to amend the Complaint to reflect the appropriate Defendant, if Mr. Talutto is indeed named in error in this Count.

9

*a.  Applicable law in First Amendment retaliation cases*

A public employee's retaliation claim for engaging in protected activity must be evaluated under a three-step process.  *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).  First, plaintiff must establish that the activity in question was protected.  *Id*. (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  For this purpose, the speech must involve a matter of public concern.  *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Watters v. City of Phila.*, 55 F.3d 886, 892 (3d Cir. 1995).  Once this threshold is met, plaintiff must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *Pickering*, 391 U.S. at 568 (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"); *Azzaro v. County of Allegheny*, 110 F.3d 968, 976 (3d Cir. 1997); *Green*, 105 F.3d at 885.  These determinations are questions of law for the Court.  *Waters v. Churchill*, 511 U.S. 661, 668 (1994); *Green*, 105 F.3d at 885.

If these criteria are established, plaintiff must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.  *Hill*, 411 F.3d at 125 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Watters*, 55 F.3d at 892; *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994).  Lastly, the public employer can rebut the claim by demonstrating that "it would have reached the same decision . . . even in the absence of the protected

conduct." *Doyle*, 429 U.S. at 287; *Swineford*, 15 F.3d at 1270 (citing *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983)).  The second and third stages of this analysis present questions for the fact finder.  *Green*, 105 F.3d at 889 (recognizing that second and third steps in *Pickering*/*Doyle* analysis are questions for fact finder); *see also Watters*, 55 F.3d at 892 n.3; *Zamboni v. Stamler*, 847 F.2d 73, 79 n.6, 80 (3d Cir.) (noting whether protected activity served as substantial or motivating factor in discharge and whether same action would have been taken regardless are questions for jury), *cert. denied*, 488 U.S. 899 (1988); *Johnson v. Lincoln Univ.*, 776 F.2d 443, 454 (3d Cir. 1985) (holding "second and third questions . . . should be submitted to the jury").

   *b.  Filing of lawsuit as protected activity*

   As a threshold issue, one who alleges retaliatory discharge from governmental employment must establish that the conduct which triggered the discharge was protected under the First Amendment.  Where the alleged retaliation is based on expressive conduct constituting speech, a court must first determine whether or not the speech can be fairly characterized as addressing a "matter of public concern," for a governmental employee who makes public complaints about problems not of public concern generally has no First Amendment immunity against employer discipline.  *Connick*, 461 U.S. at 147.  Smith's expressive conduct here was speech, but that speech was made in the context of the filing of the present action.  Thus, the First Amendment's Petition Clause, rather than the Free Speech Clause, is implicated here.

   The Third Circuit Court of Appeals alone has diverged from the other circuit courts and held that a public employee is protected under the Petition Clause against retaliation

for having filed a lawsuit, even if that lawsuit addresses matters of purely *private* concern, so long as the petition is not 'sham'.  *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995).

The arguments in the Plaintiff's lawsuit do not represent sham, baseless litigation in the eyes of the Court.  Further, whether the matters raised in Plaintiff's lawsuit were of legitimate concern to the public or instead matters of purely private concern need not be determined by the Court, since upon either finding Plaintiff's filing of the present action is "protected activity" under the First Amendment jurisprudence in this circuit.  The Court takes care to note here that the reasoning expounded in cases such as *Connick* and *Bongiovanni* arose in the context of an alleged retaliatory *discharge*, and that Mr. Smith was never discharged from his employment.  Nevertheless, the analysis of an alleged adverse employment action, such as the denial of early retirement benefits, should be performed under the same standards as applied in those cases.

In addition, the Court need not perform the *Pickering* balancing test, since Defendants have made no contention that Plaintiff was justifiably denied early retirement because of any disruption caused by Plaintiff's commencement of the present litigation. *Swineford*, 15 F.3d at 1272; *see also Bongiovanni*, 30 F.3d at 434 n.11 (stating that *Pickering* balancing test triggered only if employer concedes employee discharged for engaging in otherwise protected speech).

    *c.  Denial of early retirement benefits as an adverse employment action*

Plaintiff claims that the Defendants' failure to act upon his motion for early retirement was an adverse employment action, and that this action was taken in

retaliation for Mr. Smith exercising his First Amendment right to bring the present action. The Court's research does not reveal any case in which a denial of *early* retirement benefits was considered an adverse employment action.  It is undisputed, furthermore, that Mr. Smith does not yet qualify for normal retirement under the guidelines established in the CBA.  Nevertheless, Plaintiff's allegation that a member of the Borough Council explicitly told him that he would not vote in favor of his application for early retirement for the express reason that Plaintiff had brought suit against the Borough Council and the individual Councilman is sufficient to create a question for a jury on the issue of whether such conduct amounted to an adverse employment action supporting Plaintiff's retaliation claim.

The Third Circuit Court of Appeals, in *McKee v. Hart*, stated that the key question in determining whether a cognizable First Amendment retaliation claim has been stated is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights . . . ."  436 F.3d 165, 170 (2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (internal quotation marks omitted)).  The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimis*.  *Id.*  Though made in the context of Free Speech Clause discussion, the Court finds the reasoning of *McKee* applicable to Petition Clause considerations as well.

After examining the entire record in the light most favorable to Plaintiff, the Court finds that Defendants have failed to show that there is no genuine issue of material fact as to whether the Borough Council's failure to act upon Plaintiff's motion for early retirement was in retaliation for his constitutionally protected conduct of commencing the

present litigation.  Accordingly, Defendants' motion for summary judgment as to this Count will be denied.

### B.    Plaintiff's Tort Claims

Plaintiff's Complaint raises three additional causes of action, under Pennsylvania law.  Count II alleges invasion of privacy-publicity placing a person in a false light, Count III alleges defamation, and Count IV alleges invasion of privacy-publicity given to private life.

### i.  Invasion of Privacy

There are four types of invasion of privacy in Pennsylvania: (1) publicity given to private life; (2) intrusion upon seclusion; (3) appropriation of name or likeness; and (4) publicity placing a person in a false light.  *Tucker v. Merck & Co., Inc.*, 102 Fed. Appx. 247, 256 (3d Cir. 2004) (citing *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 (Pa. 1974)). Plaintiff's Complaint raises causes of action under types (1) publicity given to a private life and (4) publicity placing a person in a false light.

A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable person to take serious offense. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (quoting *Curran v. Children's Serv. Ctr. of Wyo. County, Inc.*, 578 A.2d 8, 12 (Pa. Super Ct. 1990)); *see also Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999).  The elements to be proven are (1) publicity, (2) given to private facts, (3) which would be

highly offensive to a reasonable person and (4) which are not of legitimate concern to the public. *Id.*

Both of these causes of action must fail.  Certainly, the proper training and certification of their firemen is a matter of legitimate concern to the residents of the Borough of Dunmore.  A public employee's qualification for his particular position is a matter of legitimate public concern when by its very nature the employee's fitness for his position implicates public safety and welfare considerations, such as in the case of a firefighter.  *See, e.g., Caldwell v. City of Elwood, Ind.*, 959 F.2d 670, 672 (7th Cir. 1992) (holding that a firefighter's statements with respect to firefighter safety are a matter of public concern*); Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 18 (2d Cir. 1979) (holding that volunteer firefighter's report charging inadequate training contained a matter of public concern); *Habel v. Macomb Twp.*, 2006 WL 508637, at *8 (E.D. Mich. March 1, 2006) (holding that topics of firefighter safety, firefighter training, and response time are matters of public concern).  Plaintiff has failed to make a showing that the matters published were not of a legitimate concern to the public.  Therefore, Plaintiff has failed to make a prima facie showing of invasion of privacy.  Accordingly, Defendants' motion for summary judgment will be granted as to Counts II and IV.

### ii. Defamation

In a defamation case, the plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to

the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  42

PA. CONS. STAT. ANN. § 8343(a); *Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 71

(Pa. Super. Ct. 2005).  Where the issue is properly raised, the defendant has the burden

of proving: "(1) the truth of the defamatory communication; (2) the privileged character of

the occasion on which it was published; [and/or] (3) the character of the subject matter of

defamatory comment as of public concern."  42 PA. CONS. STAT. ANN. § 8343(b); *Weber*,

878 A.2d at 71-72.

In the present controversy, Smith alleges that the contents of the June 28, 2005

letter sent to Chief Arnone, notifying him that Plaintiff was being suspended from the

schedule, were capable of defamatory meaning.  The letter reads, in pertinent part:

> A review of the training and qualification statements, that you provided, for
> the full-time firefighters employed by the Borough of Dunmore reveals the
> following:
> 1. Captain Edward Smith has not completed two weeks of training at the
> Fire Academy[.]
> A hearing is being scheduled for July 6, 2005 to determine the action to be
> taken.
> The above named officer[] [is] to be suspended from the schedule, with
> pay, pending the hearing of July 6, 2005.

(No. 05-1343, Doc. 25.)  The contents of this letter were apparently leaked to the press,

who published a story on June 30, 2005.  In the article, Chief Arnone disputed Plaintiff's

suspension, claiming that he was "granfathered in".  Further, Councilman Paul Nardozzi,

who was not named as a Defendant in this action, is quoted in the story as saying "I don't

think this was looked at and researched enough.  I don't believe there's anything there

that warrants a suspension."

The Court's initial inquiry concerns whether the statements contained in the June

28, 2005 letter were capable of a defamatory meaning.  "In an action for defamation, the

plaintiff has the burden of proving . . . [t]he defamatory character of the communication."
42 PA. CONS. STAT. ANN. § 8343(a).  "It is the function of the court to determine whether
the challenged publication is capable of a defamatory meaning.  If the court determines
that the challenged publication is not capable of a defamatory meaning, there is no basis
for the matter to proceed to trial."  *Tucker v. Phila. Daily News*, 848 A.2d 113, 123-24
(Pa. 2004) (quoting *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215-16
(Pa. 1981)).

To determine whether a statement is capable of a defamatory meaning, we
consider whether the statement "tends so to harm the reputation of another as to lower
him in the estimation of the community or to deter third parties from associating or
dealing with him."  *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960) (quoting
RESTATEMENT (FIRST) OF TORTS, § 559 (1989)).  "Libel is the malicious publication of
printed or written matter which tends to blacken a person's reputation and expose him to
public hatred, contempt or ridicule."  *Schnabel v. Meredith*, 107 A.2d 860, 862 (Pa. 1954);
*see also Corabi v. Curtis Publ'g Co.*, 273 A.2d 899, 904 (Pa. 1971).  "The court must view
the statements in context."  *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987).
*Tucker*, 848 A.2d at 125.

Words which standing alone may reasonably be understood as defamatory may
be so explained or qualified by their context as to make such an interpretation
unreasonable.  Thus, we must consider the full context of the article to determine the
effect the article is fairly calculated to produce, the impression it would naturally
engender, in the minds of the average persons among whom it is intended to circulate.

17

Case 3:05-cv-01343-ARC   Document 48   Filed 03/07/07   Page 18 of 25

*Thomas Merton*, 442 A.2d at 216 (internal citations and quotations omitted).  "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society."  *Scott-Taylor, Inc. v. Stokes*, 229 A.2d 733, 734 (Pa. 1967).  *Tucker*, 848 A.2d at 124.

While the contents of the June 28 letter include no statement, suggestion, or innuendo to the effect that Defendants believed Plaintiff to be unfit for duty as a fireman, as the June 30 article is written, it is capable of a defamatory meaning because the average person who may have read the article could reasonably conclude that Plaintiff lacked the requisite training to respond adequately to fires in the community.  Though containing comments from Chief Arnone and Paul Nardozzi to the contrary, a defamatory reading of this article, taken as a whole, is reasonably possible.

Next, it is the Court's finding that Plaintiff has adequately established that the second, third, fourth, and fifth elements of his defamation claim have been satisfied here. Defendants clearly published the June 28 letter, and Plaintiff is expressly named in the letter as lacking a certification required for his continued employment.

As to element (6) of a defamation claim, Plaintiff has sufficiently alleged damages to his reputation in the community as a result of the publication of the June 28 letter and the subsequent Times-Tribune article.  *See Smith v. Wagner*, 588 A.2d 1308,1311 (Pa. Super Ct. 1991).  A plaintiff in libel in Pennsylvania need not prove special damages or harm in order to recover; he may recover for any injury done his reputation and for any other injury of which the libel is the legal cause.  *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 474 (Pa. Super Ct. 1984).  Mr. Smith has alleged that people in the community have

18

approached him, asking questions such as 'Are you licensed yet?', and that as a result

he has suffered severe emotional anguish and embarrassment, as well as loss of his

reputation and good standing in the community.  The Court finds these allegations

sufficient to satisfy this element of the analysis.

Finally, the Court considers whether Defendants abused a conditionally privileged

occasion when publishing the June 28 letter.  Some classifications of statements have

been accorded a qualified privilege concerning allegedly defamatory material contained

in such statements.  To be privileged, a statement must have been made upon a proper

occasion, from a proper motive, in a proper manner, and based upon reasonable or

probable cause.  *Rue v. K-Mart Corp.*, 691 A.2d 498 (Pa. Super. Ct. 1997), *order aff'd*,

713 A.2d 82 (Pa. 1998); *Miller v. Hubbard*, 207 A.2d 913 (Pa. Super. Ct. 1965).  A

privilege is deemed abused and liability may be determined under traditional defamation

principles if: (1) the communication is made to third persons without a legitimate interest;

(2) it includes matter not deemed to be necessary for the purposes of the privilege; (3) it

is made for a purpose other than that for which the privilege is given; or (4) it is actuated

by malice or negligence.  *Davis v. Res. for Human Dev., Inc.*, 770 A.2d 353 (Pa. Super

Ct. 2001).

A conditional privilege arises in a defamation action when: (1) some interest of the

person who publishes defamatory matter is involved; (2) some interest of the person to

whom the matter is published or some other third person is involved; or (3) a recognized

interest of the public is involved.  *Miketic v. Baron*, 675 A.2d 324 (Pa. Super Ct. 1996);

*Vargo v. Hunt*, 581 A.2d 625 (Pa. Super. Ct. 1990).

A qualified privilege may be destroyed by a libel defendant's failure to exercise

reasonable care and diligence to ascertain the truth before giving currency to an untrue

communication. *Montgomery v. Dennison*, 69 A.2d 520, 524 (Pa. 1949).  The qualified

privilege for defamatory statements is not abused if the communication is accurate and

complete and not published solely for purposes of causing harm to the person defamed,

although abuse of the conditional privilege occurs when the publication is actuated by

malice or negligence, is made for a purpose other than that for which the privilege is

given, or is made to a person not reasonably believed to be necessary for

accomplishment of the purpose of the privilege.  *Green v. Mizner*, 692 A.2d 169 (Pa.

Super Ct. 1997).

Here, a conditional privilege in the publication of the June 28 letter was held by the

Borough.  The Borough Council has the authority, indeed the duty, to review the

qualifications of public employees, such as firemen, from time to time.  Proper training

and certification of these employees undoubtedly involves a recognized interest of the

public.  However, the privilege held by the Borough in publishing the contents of the June

28 letter was defeated by their failure to exercise reasonable care and diligence to

ascertain the truth before giving currency to what amounted to an untrue communication,

*e.g.*, that Plaintiff lacked a required certification warranting a suspension from the

schedule, when in fact due diligence would have revealed that he was not required to

have said certification pursuant to the CBA.  *Montgomery,* 69 A.2d at 524.

Plaintiff has sufficiently alleged each of the elements of defamation, and has

therefore made a *prima facie* showing thereof.

## C.      Defendants' Affirmative Defenses

### i. *Absolute Privilege for High Public Officials - Immunity from Defamation Suits*

More than a half-century ago, the Pennsylvania Supreme Court, in *Matson v. Margiotti*, 88 A.2d 892 (1952), set forth the common law doctrine of absolute privilege for high public officials.  In that case, the Court explained the doctrine of absolute privilege for high public officials as follows:

> [A]s its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Id.* at 895.  In *Lindner v. Mollan*, 677 A.2d 1194 (1996), the Pennsylvania Supreme Court reconfirmed that this doctrine remains the law in Pennsylvania.  Furthermore, the Court in *Lindner* noted that the cases on absolute privilege "have sought to strike a balance between the public's interest in the unfettered and full discussion of public business among our government officials while recognizing the undeniable right of the individual to be protected in his or her reputation."  *Id.* at 1197.  The Pennsylvania Supreme Court explained–nearly fifty years ago–the purpose of absolute immunity as to foreclose the possibility of suit, stating as follows:

> Absolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury.  And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business.  Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies.

*Montgomery v. City of Phila.*, 140 A.2d 100, 102 (1958).

Recently, the Commonwealth Court of Pennsylvania has noted that "where an official is entitled to absolute privilege, any personal or political motives are immaterial, as is the presence of malice or want of reasonable and probable cause or the fact that the innocent may sometimes suffer irreparable harm."  *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 566 (Pa. Commw. Ct. 2005), *petition for allowance of appeal denied*, 897 A.2d 459 (Pa. 2006).  In *Osiris Enterprises*, the Commonwealth Court further noted that Section 8550 of what is commonly referred to as the Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. ANN. § 8550, and which sets forth circumstances where official immunity can be waived, "does not abrogate the privilege of high public official immunity from suit."  *Id.* at 566.

In this case, there is no question that the individually named Defendants are high public officials, as local councilmen.  *Hall v. Kiger*, 795 A.2d 497 (Pa. Commw. Ct. 2002) (holding that a local councilman is a high public official for purposes of the application of the absolute privilege defense); *Spotso v. Borough of Dickson City*, 2005 WL 3307333, at *4 (M.D. Pa. December 6, 2005) (Caputo, J.).  The Court must then examine whether the alleged defamatory statements were made within the scope of Defendants' official duties and authority.  In this instance, Defendants were engaged in a determination whether members of the Borough Fire Department had the proper training and certifications in compliance with the regulations set forth in the CBA, and prepared the allegedly defamatory publication as a result of this process.  This is clearly a matter within the course of duties, and scope of authority, inherent in the Dunmore Borough Council and

the individual members that compose this body.

Therefore, since Defendants' remarks were within the scope of their authority as Councilmen for the Borough of Dunmore, they are immune from this libel suit under the doctrine of absolute privilege afforded high public officials.  Further, the Borough of Dunmore is absolutely immune from a suit for defamation, as an action in defamation falls within none of the eight enumerated exceptions to the local agency immunity set forth in Section 8542(b) of the Political Subdivisions Tort Claims Act, 42 PA. CONS. STAT. ANN. § 8550.  Accordingly, Defendants' motion for summary judgment as to this Count will be granted.

### ii.  Municipal Immunity from Suit based on Willful Misconduct of Employee

Moreover, the Political Subdivisions Tort Claims Act does not permit the imposition of liability on a local agency or municipality for the willful misconduct of its employees. *City of Phila. v. Glim*, 613 A.2d 613,  (Pa. Commw. Ct. 1992).  A claimant seeking to impose liability on a local agency or municipality has the burden of establishing (1) that a common-law or statutory cause of action exists against the local agency as a result of a negligent act of the local agency or its employee *acting within the scope of his employment*, 42 PA. CONS. STAT. ANN. § 8542(a), and (2) that the negligent act falls within one of the eight exceptions to sovereign immunity enumerated in subsection 8542(b) of the Judicial Code, 42 PA. CONS. STAT. ANN. § 8542(b).  In the present case, the only surviving claim is Count VI, alleging retaliation by a councilman and the Borough as a result of Plaintiff's exercise of his First Amendment right to petition the courts.  Clearly then, if a councilman did act in a manner that is violative of Plaintiff's First Amendment rights, he was acting wilfully outside of the scope of his employment as a councilman with

23

the Borough.  Therefore, this cause of action cannot survive against the Borough of

Dunmore because the municipality is immune from suit pursuant to 42 Pa. Const. Stat.

Ann. § 8542(a).  Accordingly, Defendant Borough of Dunmore's motion for summary

judgment will be granted as to Count VI.

## CONCLUSION

After reviewing all pertinent evidence from the record, the Court is of the opinion

that genuine issues of material fact exist as to some of the matters present in this case.

Accordingly, Defendants' motion for summary judgment will be granted in part and denied

in part.

An appropriate Order follows.

March __7__, 2007                                         /s/ A. Richard Caputo
                                                                  A. Richard Caputo
                                                                  United States District Judge

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD G. SMITH, | |
| Plaintiff, | NO. 3:05-CV-1343 |
| v. | |
| | (JUDGE CAPUTO) |
| BOROUGH OF DUNMORE, BOROUGH OF DUNMORE COUNCIL, and JOSEPH LOFTUS, THOMAS HENNIGAN, JOSEPH TALUTTO, FRANK PADULA, LEONARD VERRASTRO, and MICHAEL CUMMINGS, *individually and as Councilmen*, | |
| Defendants. | |

## ORDER

**NOW**, this __7th__ day of March, 2007, **IT IS HEREBY ORDERED** that:

(1)  Defendants' motion for summary judgment (Doc. 31) pursuant to Federal Rule of Civil Procedure 56 is **GRANTED** as to Counts I-V.

(2)  Summary judgment is entered in favor of Defendants Borough of Dunmore, Borough of Dunmore Council, Joseph Loftus, Thomas Hennigan, Frank Padula, and Michael Cummings.

(3)  Defendants' motion for summary judgment (Doc. 31), pursuant to Federal Rule of Civil Procedure 56 is **DENIED** as to Count VI.

(4)  Plaintiff will be granted ten (10) days leave to amend the Amended Complaint to reflect the proper Defendant, Joseph Talutto or Leonard Verrastro, in Count VI, if such a correction is necessary.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge