**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD SMITH

    Plaintiff,

        v.

BOROUGH OF DUNMORE,

    Defendant.

CIVIL ACTION No. 3:05-CV-1343

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Plaintiff Edward Smith's Petition for Attorneys' Fees and Costs (Doc. 109).  For the reasons set forth below, Plaintiff's petition will be granted in part and denied in part.  Plaintiff's counsel will be awarded twenty thousand dollars ($20,000.00) in attorney's fees, and Plaintiff will be awarded two thousand, seven hundred twenty-eight dollars and sixteen cents ($2,728.16) in costs.

## BACKGROUND

Plaintiff Edward Smith brought this action against the Borough of Dunmore and against Borough Manager Joseph Loftus and Councilmen Michael Cummings, Thomas Hennigan, Joseph Talutto, Frank Padula, and Leonard Verrastro, alleging First Amendment retaliation, a due process violation, and various state law claims.  (Am. Compl., Doc. 23.)  Defendants were granted summary judgment on the state law claims, due process claims, and claims of First Amendment retaliation for protected speech, and the case proceeded to trial, only against the Borough and Leonard Verrastro, on the claims of First Amendment retaliation for protected petition activity.  (Mem. & Order, Mar. 7, 2007, Doc. 48.)  At the close of Plaintiff's case, upon Defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, the claims against Mr. Verrastro and the claim for punitive damages were

dismissed.  The jury entered a verdict against the Borough of Dunmore and awarded Mr. Smith one dollar ($1.00) in nominal damages.  (Doc. 108.)  After trial, the Court granted Plaintiff's motion for equitable relief, ordering that the Borough grant Plaintiff early retirement. (Oral Order, Nov. 20, 2007.)

Plaintiff now requests the Court award his counsel attorney's fees and costs in the amount of one hundred forty thousand, three hundred eighty-five dollars and seventy-seven cents ($140,385.77).  (Doc. 109.)  Plaintiff also requests an additional three thousand, seven hundred sixty-five dollars ($3,765.00) for fees and costs associated with this fee petition. (Doc. 138.)  As the Court has heard oral arguments from parties and the motion is fully briefed, it is currently ripe for disposition.

## DISCUSSION

The Court may award reasonable attorney fees and costs to the prevailing parties in § 1983 cases.  *See* 42 U.S.C. § 1988(b).  Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). However, "[t]his is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.*

### I.      Attorney's Fees - Reasonable Hours and Reasonable Fees

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate."  *Blum v. Stetson*, 465 U.S. 886, 888 (1984). This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee.

2

*Pennsylvania v. Delaware Valley Citizens' Counsel*, 478 U.S. 546, 565 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711, 730-31 (1987).

_____In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The Court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable. *Id.*

The Court must also determine whether the number of hours spent on the litigation was a reasonable number of hours. The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted). Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Thus, using the lodestar methodology, the Court can calculate a reasonable attorney's fee. Here Plaintiff suggests a rate of three hundred dollars ($300.00) per hour, for a total of four hundred-four and eight-tenths (404.8) hours.

A.    *Justified Attorney Time*

Defendants argue that none of the hours submitted in the current case should be considered reasonable because the Plaintiff has earned merely a technical victory and should not be entitled to attorneys' fees in accordance with the Supreme Court's decision

in *Farrar v. Hobby*. 506 U.S. 103 (1992). In *Farrar*, the Supreme Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988 . . . A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id*. at 112-13.

"Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* at 114. Once the litigation "materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award" under the standard established in *Hensley*, 461 U.S. 424. *Farrar*, 506 U.S. at 114 (*quoting Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782 (1989)). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* (*quoting Hensley*, 461 U.S. at 436). "Where recovery of private damages is the purpose of . . . litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment). "In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury." *Farrar*, 506 U.S. at 115 (*citing Carey v. Piphus*, 435 U.S. 247, 254-64 (1978)). "Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action 'must always be designed to compensate injuries caused by the [constitutional] deprivation.'" *Farrar*, 506 U.S. at 115 (*quoting Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 309 (1986)).

In this case, a jury found that the Plaintiff established by a preponderance of the

4

evidence (1) that the Defendant took adverse action against him, (2) that the Plaintiff's protected activity was a motivating factor in the adverse action taken against him, and (3) that the Defendant failed to establish by a preponderance of the evidence that it would have denied the Plaintiff early retirement even if the Plaintiff had not filed suit against Defendant. However, the jury also found that the Defendant's actions did not cause any injury to the Plaintiff and declined to award any compensatory damages.  Following trial, the Plaintiff requested and obtained equitable relief entitling him to early retirement by an Order of the Court on Nov. 20, 2007.

Given the nominal damages awarded to the Plaintiff at trial and the equitable relief granted following trial, the Court considers the current case analogous to the situation addressed by the *Farrar* court, but with the granted equitable relief present as an added factor.

> [W]here both monetary and equitable relief have been pursued, the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success. "For example, a plaintiff who failed to recover damages but obtained injunctive relief . . . may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (*quoting Hensley*, 461 U.S. at 435 n.11).  Thus, the questions before the Court are whether the equitable relief obtained by Plaintiff Smith justified the expenditure of attorney time and, if so, what portion of the attorney time submitted in Plaintiff Smith's Petition was reasonably expended to secure this equitable relief.

Count VI of the Plaintiff's Amended Complaint, the only claim surviving summary judgment and proceeding to trial, alleges that the Defendants retaliated against the Plaintiff

due to his First Amendment-protected activity.  On the basis of this allegation, Plaintiff sought relief that included nominal and punitive damages, injunctive relief, and a public apology. Plaintiff was unable to prove any injury warranting the award of any damages except nominal damages.  However, he did achieve a level of success through this Court's Order granting him early retirement, and the jury's award of nominal damages serves as a public acknowledgment that Defendants violated his First Amendment rights.  Accordingly, the Court determines that the nature of relief Plaintiff Smith obtained justified the expenditure of attorney time and turns to the question of what portion of the submitted hours can be reasonably attributed to this relief.

B.	Reasonable Hours

When determining if the hours spent on litigation were reasonable, the Court must "review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  The general guide for reasonableness is that "[h]ours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority.*"  Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).

To meet his initial burden of proving that requested fees are reasonable, Plaintiff must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).  To be specific enough, a petition must be "'fairly definite ... as to the hours devoted to various general

activities, e.g., pretrial discovery, settlement negotiations' .... However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted . . . .'" *Id.* at 1037-38 (*quoting Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)).  Further, there is no requirement "that records be kept by task - e.g., for each motion, issue or part of the case." *Id.* at 1038.

Once Plaintiff has met this initial burden, "[t]he party opposing the fee award then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief with sufficient specificity to give the fee applicant notice of the objection." *E.E.O.C. v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 721 (M.D. Pa. Jan. 18, 2005) (Kane, J.).  "Once the adverse party raised objections to the fee request, the district court has considerable discretion to adjust the award in light of those objections." *Id.*

Defendants contend that the Plaintiff's requested attorney's fees and costs include excessive fees, duplicate entries, and time spent for matters other than the matter currently before the Court and ask that any fee award make appropriate reductions for these improper entries.  The district court is to exclude from its fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S at 434.  The Court must, therefore, conduct a detailed review of the Plaintiff's requested fees and costs.

1.     Overlap With *Dee* Case

At the time that Plaintiff commenced the current case, a similarly situated plaintiff, Robert Dee, commenced a nearly identical action against Defendants.  The cases were combined for purposes of discovery, and accordingly, many of the attorney hours expended in the early stages of these two cases was performed to the benefit of both plaintiffs.  In such cases, it is appropriate for the Court to  treat the fees in the manner in which the clients

would be treated if the clients were paying the fees directly. *Pub. Interest Research*, 51 F.3d at 1188.

The Defendants argue that one hundred twenty-eight and two-tenths (128.20) hours of Attorney Pollick's submitted time overlaps with the *Dee* case and should be reduced by fifty percent (50%). The Court has reviewed the Defendants' specific objections and finds that the time submitted by Attorney Pollick includes numerous entries from 2005, 2006, and the first two months of 2007 that represent time spent for the shared benefit of this case and the *Dee* case. Accordingly, the Court will reduce Plaintiff's submitted hours by sixty-four and one-tenth (64.1) hours.

2.      Inapplicable Hours

Second, Defendants argue that Plaintiff has requested attorney's fees for time that is inapplicable to the Plaintiff's case. The contested time includes multiple time entries for single tasks, time entries for work on motions that were later withdrawn by the Plaintiff, and entries for work unrelated to this case.

Defendants specifically argue that five and six-tenths (5.6) hours of submitted time should be subtracted from Plaintiff's fee request because the time entries are duplicative of other entries in Attorney Pollick's records. The Court has extensively reviewed Attorney Pollick's time records and notes numerous instances where multiple entries are made for identical or nearly identical time narratives. "'Hours that would not generally be billed to one's own client are not properly billed to an adversary.'" *Maldonado*, 256 F.3d at 184 (quoting *Pub. Interest Research,* 51 F.3d at 1188). Since Attorney Pollick could not appropriately bill her client for these charges, the Court will deduct five and six-tenths (5.6) hours from Plaintiff's submitted time.

8

Defendants also argue that Attorney Pollick's submitted time includes twenty and seven-tenths (20.7) hours related to work on motions that were later withdrawn by the Plaintiff.  On December 12, 2006, the Plaintiff made an unopposed Motion to Withdraw (Doc. 45) its Motion for Partial Summary Judgement (Doc. 25).  Since the withdrawn motion had no bearing on the relief ultimately obtained by the Plaintiff, the Court finds that it is not appropriate to assess Defendants with the cost of preparing this motion and deducts twenty and seven-tenths (20.7) hours from Attorney Pollick's submitted time.

Defendants also note that several entries on Attorney Pollick's time records are vague and should be deducted from the hours used in the calculation of an appropriate attorney fee award in this case.  These entries relate to seven-tenths (0.7) hours of time.  The Court has reviewed each entry identified as vague and finds that the entries do not meet the specificity standards articulated in *Washington*.  *See Washington*, 89 F.3d 1037 (requiring evidence "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.").  Accordingly, the Court will deduct seven-tenths (0.7) hours from Attorney Pollick's submitted time for purposes of calculating appropriate attorney fees in this case.

Defendants further argue that several entries on Attorney Pollick's time records are for work entirely unrelated to the present case, including one and two-tenths (1.2) hours of work entirely for the benefit of the *Dee* case and one and four-tenths (1.4) hours of work entirely for the benefit of different plaintiffs Attorney Pollick represented in suits against the Borough of Duryea.  Furthermore, the Defendants argue that the submitted time records include entries for three (3) hours of work not associated with either this case or the *Dee* and *Duryea* matters. The Court has reviewed each of the identified entries and determines that

9

they have no relationship to the current case.  Since these charges could not appropriately be billed to Attorney Pollick's client, the Court will not assess them against Defendants and will deduct five and six-tenths (5.6) hours from Attorney Pollick's submitted hours.

In summary, the Court finds that a total of thirty-two and six-tenths (32.6) hours submitted by Attorney Pollick are inapplicable to the current case.  This time will not be considered in Plaintiff's request for attorney's fees.

      3.    Excessive Hours

Defendants further argue that a number of Plaintiff's time entries are excessive.  First, Defendants note that Attorney Pollick submits three (3) hours of time for her attendance at Plaintiff's February 2, 2006 deposition.  The transcript for this deposition, however, clearly shows that the deposition lasted only two and one-half (2.5) hours.  (Smith Transcript, Doc. 25, Ex. 5, 1.)  Defendants similarly note that Attorney Pollick submits six (6) hours of time for her attendance at the deposition of Joseph Talutto while the deposition lasted only four and six-tenths (4.6) hours.  However, the copy of the transcript submitted to the Court for this deposition omits the first two pages containing information that would allow the Court to verify Defendants' claims.  Accordingly, the Court will deduct one-half (0.5) hours from the time submitted for Plaintiff's deposition, but will not adjust the submitted time for the Talutto deposition.

Defendants further argue that a number of Plaintiff's time entries are excessive in light of the nature of the work performed.  The Court has reviewed each of the time entries identified by Defendants, has reviewed corresponding documents, and finds as follows based on this review.

The Defendants question the Plaintiff's recorded time of one and two-tenths (1.2)

hours used to review a page extension motion on September 18, 2006.  The motion filed by Defendants on September 18, 2006 was twelve (12) pages in length, including signature pages and proposed orders. The Court finds that one-half (0.5) hour, not one and two-tenths (1.2) hours, is a reasonable time for its review.

Defendants question the Plaintiff's recorded time of twenty-seven (27) hours of legal research and preparation of a brief in opposition to a summary judgment motion between October 14 & 17, 2006.  The twenty-seven (27) hours spent preparing the Plaintiff's thirty-eight (38) page brief in opposition included six (6) hours of legal research "regarding *Paul v. Davis* in all circuits." (Time Sheets, Doc. 109, Ex. A, 9.)  Yet, the *Paul* case is not cited in the Plaintiff's brief.  Thus, the Court finds that these six (6) hours are unreasonable and will not consider them as part of Plaintiff's fee request.   The Court does not find the additional four (4) hours of legal research unreasonable for a pleading of this length, but does find that ten (10), not seventeen (17), additional hours is reasonable preparation time for the submitted document.

Defendants question Plaintiff's recorded time of three and two-tenths (3.2) hours preparing an amended complaint that simply replaced one name with another on March 8, 2007.  The Court also reviewed the four (4) page Second Amended Complaint (Doc. 49) prepared by Attorney Pollick on March 7, 2007.  In light of this document's brevity and substantive similarity to Plaintiff's original Complaint (Doc. 1), the Court finds that one (1) hour, not three and two-tenths (3.2) hours, represents the  reasonable preparation time for this document.

Defendants also question the Plaintiff's accounting of  nine (9) hours for preparation of a brief in opposition to a motion *in limine* between September 19 & 24, 2007. The Court

has also reviewed the resulting eight (8) page brief in opposition and finds that five (5) hours, not nine (9) hours, was reasonable time for this document's preparation.

Defendants dispute Plaintiff's accounting of two (2) hours preparing trial subpoenas on October 10-12, 2007, noting that the time appears excessive compared to other subpoena preparation entries.  The Court has reviewed these hours and does not find compelling evidence of their excessiveness in either the submitted time sheets or documents in the record.  Accordingly, the Court makes no alteration to these hours.

The Defendants further question Plaintiff's accounting of eleven and four-tenths (11.4) hours, from October 12-16, 2007, used to review council meeting minutes for excerpts to use in trial.  The Plaintiff entered four exhibits at trial labeled council meeting minutes.  However, the Court finds the Plaintiff's accounting of their review of meeting minutes excessive in light of these documents' length and the time period relevant to this case.  Accordingly, the Court finds that five (5) hours, not eleven and four-tenths (11.4) hours represent a reasonable amount of time for this review.

Finally, the Defendants note that Attorney Pollick billed large amounts of time on the days immediately before and during trial in October 2007.  Ms. Pollick requests fees for nineteen and one-tenth (19.1) hours on October 24, 2007, fourteen (14) hours worked October 27, 2007, thirteen (13) hours on October 28, 2007, and twenty-one and three-tenths (21.3) hours worked on October 30, 2007.  Plaintiff argues that the number of hours worked on these days is not excessive because "Plaintiff's counsel works around the clock just before and during trial to make sure her presentation reflects the necessary preparation that this Court requires."  (Pl.'s Rep. Br. in Supp. Mot. Atty. Fees, Doc. 124, 14.)  Plaintiff also notes that since Attorney Pollick "is a sole practioner [sic], she often has no choice but to

burn the midnight oil to accomplish the research, briefing, and presentation requirements demanded at trial." (*Id.*)  Although the Court notes that Attorney Pollick was the only attorney representing the Plaintiff, the time requested on October 24 & 30, 2007 is excessive.  The Court finds that a fourteen (14) hour day during and immediately before trial is appropriate.  Therefore, for October 24 & 30, the Court will consider fourteen (14) hours per day appropriate.  This represents a twelve and four-tenths (12.4) hour reduction from Plaintiff's original submission.

In summary, the Court finds that thirty-nine and two-tenths (39.2) hours of the time submitted by Plaintiff's counsel is in excess of the time necessary to properly litigate this case.  These hours will not be considered in Plaintiff's request for attorney's fees.

4.      Total Reduction in Hours

Plaintiff initially requested fees for a total of four hundred, four and eight-tenths (404.8) hours.  The Court will reduce this number based upon duplicativeness, inapplicability, and excessiveness.  First, the Court will reduce the number of hours by sixty-four and one-tenth (64.1) for duplicativeness.  Second, the Court will reduce the number of hours by thirty-two and six-tenths (32.6) for inapplicability.   Third, the Court will reduce the number of hours by thirty-nine and two-tenths (39.2) due to excessiveness.  In total, the Court will reduce Plaintiff's request by one hundred thirty-five and nine-tenths (135.9) hours.  The Court will consider a total of two hundred and sixty-eight and nine-tenths (268.9) hours as reasonable for the purposes of the current motion for attorney's fees.

B.      *Reasonable Fee*

Defendants also dispute the reasonableness of the hourly rate requested by Smith's counsel.   Plaintiff Smith's attorney charges three hundred dollars ($300.00) per hour.

(Pollick Decl. ¶ 11, November 11, 2007, Doc. 109 Ex. 2.)  The Court recently examined nearly identical supporting documentation in a fee petition submitted by Ms. Pollick in a substantially similar case, *Lohman v. Duryea Borough*, No. 3:05-CV-1423, 2008 WL 2951070 (July 30, 2008) (Caputo, J.).  As a result of that examination, the Court determined that two hundred fifteen dollars ($215.00) per hour was a reasonable hourly fee, based on Ms. Pollick's skill, reputation, and experience. *Lohman*, 2008 WL 2951070 at *6 -*8.  Given the many similarities between the current case and *Lohman*,[1] the Court will adopt the *Lohman* rate in the present case based on the reasoning in that opinion.

C.      *Lodestar Calculation*

1.      Lodestar for Ms. Pollick

In order to calculate the lodestar, the Court must find the product of the reasonable hours times the reasonable fee.  The Court found a reasonable number of hours to be two hundred sixty-eight and nine-tenths (268.9) hours.  The reasonable fee was found to be two hundred fifteen dollars ($215.00).  Therefore, the lodestar is calculated to be fifty-seven thousand, eight hundred thirteen dollars and fifty cents ($57,813.50).

Plaintiff also requests an additional three thousand, six hundred dollars ($3,600.00) for preparation of this fee petition and related filings.  This would be twelve (12) hours times her requested rate.  As the Court found that the reasonable rate would be two hundred fifteen dollars ($215.00), her lodestar for fees for preparation of the petition is reduced to two

---

[1]      In *Lohman*, Ms. Pollick represented a plaintiff in an employment action against a municipality that was represented by Mr. Joseph O'Brien and Ms. Karoline Mehalchick, who also represent Defendants in the current case.  Given the similarities between the two cases, including identical counsel, many of the briefs, declarations, and other documents presented in arguments for and against the fee petition currently before the Court are identical or substantially similar to the supporting documents presented in *Lohman*.

thousand, five hundred eighty dollars ($2580.00)._____

_____The total lodestar inclusive of this fee petition for Ms. Pollick's fees is calculated to be sixty thousand, three hundred ninety-three dollars and fifty cents ($60,393.50).

     2.   <u>Legal Assistant Lodestar</u>

Plaintiff also submits costs for work by legal assistants in the amount of nine thousand, six hundred ninety-seven dollars and fifty cents ($9,697.50).  This amount reflects one hundred twenty-nine and three-tenths (129.3) hours billed at seventy-five dollars ($75.00) per hour as suggested by Ms. Pollick.  For the reasons discussed above, Defendants argue that time recorded prior to the dismissal of the *Dee* case should be reduced by fifty percent (50%) as the work performed was for the benefit of this case and the *Dee* case.  The Court has closely reviewed the time summaries submitted with Plaintiff's motion and finds that thirteen and two-tenths (13.2) hours of legal assistant time submitted is from the combined discovery periods for this case and the *Dee* case.  Even though Defendants do not make any itemized objections to these time entries, the Court will reduce these hours by six and six-tenths (6.6) hours to account for overlap with the *Dee* case.

The majority of legal assistant time submitted with Plaintiff's motion took place in 2007 when one hundred twelve and one-tenth (112.1) hours were recorded.  Defendants do not dispute these hours worked by legal assistants as excessive, duplicative or otherwise inapplicable.  Accordingly the Court finds that legal assistants totaled one hundred eighteen and seven-tenths (118.7) hours of work on this case.  Plaintiff requests a fee of seventy-five dollars ($75.00) per hour for legal assistants.  Defendants do not dispute this fee rate.  Therefore, the lodestar for the legal assistants is the product of one hundred eighteen and seven-tenths (118.7) hours of work times seventy-five dollars ($75.00). The lodestar for legal

assistants is calculated to be eight thousand, nine hundred two dollars and fifty cents ($8,902.50).

Plaintiff also requests an additional one hundred sixty-five dollars ($165.00) in legal assistant fees for work performed in preparation of the fee request currently before the Court. This represents two and two-tenths (2.2) hours of legal assistant work at the seventy-five dollar ($75.00) rate. Thus, the correct lodestar figure for legal assistants here, inclusive of this fee petition, is nine thousand, sixty-seven dollars and fifty cents ($9,067.50).

### 3.    Legal Researcher Lodestar

Plaintiff further requests two thousand, eight hundred dollars ($2,800.00) for twenty-eight (28) hours of work performed by legal researchers in this case. This represents a rate of one hundred dollars ($100.00) per hour. Defendants do not object to this time as excessive, duplicative or otherwise inapplicable, nor do Defendants dispute the suggested rate. Thus, the Court finds that two thousand, eight hundred dollars ($2,800.00) is the appropriate lodestar amount for legal researcher work in this case.

### 4.    Other Considerations

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S at 434. The Court will now consider these additional considerations.

### D.    The Twelve *Johnson* Factors

A court may consider other factors besides the reasonable rate times reasonable hours to adjust the fee upwards or downwards. *Hensley*, 461 U.S. at 434. In *Hensley,* 461 U.S. at 429-30, the Supreme Court held that "[t]he amount of the fee, of course, must be

determined on the facts of each case. On this issue the House Report simply refers to twelve

factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."

The twelve (12) factors are:

> (1) the time and labor required;

> (2) the novelty and difficulty of the questions;

> (3) the skill requisite to perform the legal service properly;

> (4) the preclusion of employment by the attorney due to acceptance of the case;

> (5) the customary fee;

> (6) whether the fee is fixed or contingent;

> (7) time limitations imposed by the client or the circumstances;

> (8) the amount involved and the results obtained;

> (9) the experience, reputation, and ability of the attorneys;

> (10) the "undesirability" of the case;

> (11) the nature and length of the professional relationship with the client; and

> (12) awards in similar cases._____

*Id.* at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19).  Many of these factors are subsumed in

the rate times hours calculation, but they may be considered as part of a court's

consideration of overall fees.  *Id.* at 434.  *Hensley* noted that "the amount involved and the

results obtained" is relevant to a fee award, and that "[t]he importance of this relationship is

confirmed in varying degrees by other cases cited approvingly in the Senate Report."  *Id.* at

430.  The Supreme Court found that appropriate fees result when the fees "are adequate to

attract competent counsel, but . . . do not produce windfalls to attorneys."  *Id.* at 430 n.4.

_____*E.      Apportionment*_____

_____Defendants argue that the number of hours requested by Plaintiff Smith should be apportioned based upon the number of successful claims.  The *Hensley* Court considered a case where plaintiffs brought multiple claims in one lawsuit.  *Hensley*, 461 U.S. at 434-35. The Court noted that a fee award should be limited when a lawsuit brings different claims of relief based upon different facts and legal theories.  *Id.*  Fees should be limited in such a case when the work on one claim is unrelated to the work on another claim.  *Id.*  A court would treat these claims as if they were raised in separate lawsuits.  *Id.*   But, the Court noted that some cases involve a common core of facts or are based on related legal theories.  *Id.* at 435.  In such a case, it would be difficult to divide the hours on a claim-by-claim basis.  *Id.*  The Court rejected a mathematical approach to reducing the fees by the ratio of claims on which the plaintiff prevailed.  *Id.* at 435 n.11.

The Court noted that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id.*  This excessive amount could arise  "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Id.*  In explaining the possibility of an excessive fee recovery, the Court emphasized that the degree of success obtained is the most critical factor.  *Id.*   The appropriate adjustment to avoid excessive fees is left to the discretion of district courts.  *Id.* at 436-37.  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."   *Id.*   This discretion simply "must be exercised in light of the

considerations we have identified [throughout the *Hensley* opinion]." *Id.* at 437.  While the Court declines to make any specific, formulary apportionment in the current case, it will remain mindful of the number of claims brought and the number of claims on which the Plaintiff actually prevailed–the so called "degree of success" factor–when determining the appropriate attorney's fee award in this case.

_____F.    Consideration of Settlement Negotiations[2]

Defendants represent to the Court that they offered Plaintiff one thousand dollars ($1,000.00) and early retirement on October 24, 2007 in an attempt to settle the claims in this case.  (Mehalchick Decl. ¶ 13, Nov. 28, 2007, Doc. 118, Ex. 1.)  Plaintiffs did not accept this offer and the case proceeded to trial on the retaliation claims against Defendants. Following trial the jury found in favor of Plaintiff, but awarded him only nominal damages of one dollar ($1.00).  Plaintiff was also successful in obtaining a post-trial Order from the Court allowing him to take early retirement.   Defendants argue that Plaintiff achieved minimal success, as the Plaintiff's demand in preparation of trial was two hundred, twenty-five thousand dollars ($225,000.00) in damages plus early retirement.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983) the Supreme Court held that "the most critical factor" in determining a reasonable fee "is the degree of success obtained."  *Id.* at 436.  However, the Court specifically stated that prevailing at trial "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."  *Id.*  Here, the question is whether the Court may consider the settlement

---

[2]      As detailed in note 1, *supra*, this Court has recently reviewed a nearly identical fee petition in *Lohman v. Duryea Borough*, 2008 WL 2951070.  Given the substantial similarities in the issues raised by the prior and current petitions, the Court reprises much of the *Lohman* framework and analysis in its review of the current case.

negotiations in determining the degree of success achieved by Plaintiff's counsel.

In a case from the District of New Jersey, *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442 (D.N.J. 2005), the court refused to use settlement negotiations in determining attorney's fees based on Federal Rule of Evidence 408.  However, other district courts in the Third Circuit have yet to decide the issue. *See Barbee v. Se. Penna. Transp. Auth.*, Civ. A. No. 04-4063, 2007 WL 403881, at *1 n.2 (E.D. Pa. Feb. 1, 2007) (declining to determine whether Federal Rule of Evidence 408 bars use of settlement in post-trial briefing).  Nor has the Third Circuit Court of Appeals issued a ruling on the use of settlement negotiations in the determination of attorney's fees.  Other courts outside of this Circuit have held that Federal Rule of Evidence 408 does not bar consideration of settlement discussions from an attorney's fee petition. *See EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 Civ. 1149 (PKL), 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (finding that Rule 408 does not bar consideration of settlement discussions in determining whether to award attorney's fees under the Copyright Act).

Federal Rule of Evidence 408 states:

> (a)    Prohibited uses. – Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > (1)    furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2)    conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in

> (b)   Permitted uses. – This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408.  In construing Rule 408, the Court finds the logic of *EMI Catalogue* to be persuasive.  The District Court for the Southern District of New York held that "evidence of the alleged settlement negotiations is not being offered to prove 'either liability for or invalidity of the claim or its amount.'  Rather, it is being offered to show that the Court's rejection of the claim should not merit an award of attorney's fees under the Court's power of equitable discretion." *EMI Catalogue*, 1996 WL 280813, at *2.  The court further held that:

> [b]ecause nothing in the language of Rule 408 requires exclusion of evidence of settlement negotiations on issues "other than liability for or invalidity of a claim or its amount," the Court can consider evidence of settlement negotiations where, as here, that evidence is probative of the objective unreasonableness of the claim for purposes of determining whether to award attorney's fees under the Copyright Act.

*Id.*  The Court agrees with the U.S. District Court for the Southern District of New York that evidence of settlement negotiations is not barred in an application for attorney's fees.  The evidence is not used to show liability or validity of a claim or amount.  Rather, the settlement negotiations are to be used as an indicator of the "degree of success obtained" by Plaintiff's counsel.  *Hensley*, 461 U.S. at 436.  The fact that Plaintiff prevailed at trial may not be entirely indicative of counsel's success.  *Id.*  Therefore, the Court will consider Defendants' settlement offer in its determination of Plaintiff's attorney's fee award.

_____G.    The Court's Award of Fees

_____Ms. Pollick's lodestar was calculated to be sixty thousand, three hundred ninety-three

dollars and fifty cents ($60,393.50).  The lodestar for her legal assistants is calculated to be

nine thousand, sixty-seven dollars and fifty cents ($9,067.50), and the lodestar amount for

her legal researchers was calculated as two thousand, eight hundred dollars ($2,800.00).

This totals seventy-two thousand, two hundred sixty-one dollars ($72,261.00).  In this case,

the Court finds that the lodestar, or the product of the reasonable rate times the reasonable

hours, results in an excessive fee award.  As per *Hensley*, a court may consider other facts

in determining an award.  *Hensley*, 461 U.S at 434.  The degree of success obtained for

Plaintiff Smith was not as great as Ms. Pollick claims.  Of the six (6) claims in the Amended

Complaint, only the First Amendment retaliation claims went to trial.  While the Plaintiff

prevailed on one of these claims, he was unable to show the jury any injury warranting

damages in excess of the nominal one-dollar ($1.00) awarded.

Furthermore, the Court notes that Attorney Pollick would have achieved greater

pecuniary success for the Plaintiff if the Defendants' settlement offer had been accepted.

A one thousand dollar ($1,000.00) result in settlement is literally a thousand (1000) times

greater than the one dollar ($1.00) result obtained at trial.  However, the Court is mindful that

success in litigation, especially civil rights litigation, cannot be measured purely by the

financial success obtained.  While the Plaintiff could have accepted one thousand dollars

($1,000) in settlement before trial, this settlement may not have provided the valuable

satisfaction that may have been derived from the jury's determination that Defendant violated

Plaintiff's civil rights.  Because of the inherent difficulty in discerning or quantifying the gain

Plaintiff received by the jury's award of nominal damages, the Court views the offered

settlement of one thousand dollars ($1,000.00) as important, but not entirely dispositive, in determination of the appropriate fee award in this case.

Attorney Pollick notes that she worked on a contingent fee basis.  Had Plaintiff settled for the one thousand dollars ($1,000.00), counsel would only have been entitled to about three hundred thirty dollars ($330.00), as contingent fee agreements often call for approximately thirty-three percent (33%).  If she had a contingent fee agreement of forty-percent (40%), she would have received four hundred dollars ($400.00).  Likewise, a contingent fee of the jury's verdict would have yielded Attorney Pollick less than a dollar.

Plaintiff's counsel argues that her client received more than the nominal amount of damages because he also obtained equitable relief in the form of early retirement.  The ability to take early retirement is clearly of value as it is an outcome that the Plaintiff sought even before initiating litigation in this case.  However, the Court notes that early retirement was part of the settlement offer extended to the Plaintiff before trial.  Plaintiff's counsel focuses on the fact that she received a jury verdict in her favor, but it appears to the Court that her client only prevailed on one claim and received a lesser result from trial than from settlement.   In this case, the results obtained at trial do not justify an award of over seventy thousand dollars ($70,000.00) as calculated by the lodestar, and surely does not justify the requested fees of over one hundred forty thousand dollars ($140,000.00).

_____The *Johnson* factors, other than the results obtained factor, also justify a reduced award.  The skill requisite to perform the services was not particularly rigorous - Plaintiff's counsel often brings First Amendment retaliation claims, and such a claim is not a new or novel issue of law.  The claims were not particularly difficult.  In fact, the claims were very similar to those in numerous cases Attorney Pollick has presented before this Court.

23

Counsel did not demonstrate any special ability in the prosecution of the case.  The case cannot be considered "undesirable" - there is no evidence that Mr. Smith was unable to attract other attorneys to this case.  These factors weigh in favor of a downward departure from the lodestar.

Based upon the *Johnson* factors, including the results obtained factor, the Court finds that a downward departure of the lodestar is warranted, and Plaintiff will be awarded a total of twenty thousand dollars ($20,000.00) in attorney's fees.  Such an award is substantially larger to the award Plaintiff's counsel would have received had the Plaintiff settled for the maximum settlement offer, and is also substantially greater than one she would have received under a normal contingent fee of the verdict.

## II.     Costs

Plaintiff's counsel also submits costs in the amount of four thousand, forty-eight dollars and twenty-seven cents ($4,048.27).  As already discussed, the Defendants argue that Plaintiff's counsel performed work in this matter that overlapped with the work performed for the *Dee* case.  Because of this potential overlap, the Defendants urge the Court to reduce any overlapping costs by fifty percent (50%).  The Court has reviewed the vaguely-labeled bill of costs submitted by Plaintiff's counsel and determines that, with the exception of the two hundred and fifty dollar ($250.00) filing fee that can be unquestionably attributed to this case, all costs occurring prior to the March 7, 2007 entry of summary judgment in the *Dee* case should be reduced by fifty percent (50%).  Among the notable items this reduction applies to include transcript fees for the 30(b)(6), Smith, and Kemeny depositions.  The reduction reduces the reasonable costs of this period, including the case filing fee, to one

24

thousand, four hundred thirty dollars and thirty-nine cents ($1,430.39).

The remaining costs from the period subsequent to March 7, 2007 total one thousand, four hundred thirty-seven dollars and fifty cents ($1,437.50).  Of these costs, Defendants argue that one hundred thirty-nine dollars and eighty cents ($139.80) representing witness fees paid by Plaintiff are unjustified because these witnesses did not testify at trial.  The Court determines that the witness fees for Dee, Monahan, and Beyer-Barber totaling one hundred thirty-nine dollars and eighty cents ($139.80) are not justified costs since none of these witnesses appeared at trial, and will not assess these costs against Defendants. Accordingly, the Court finds that the Plaintiff incurred one thousand, two hundred ninety-seven dollars and seventy cents ($1,297.77) in costs for the period following March 7, 2007, and the Court will award two thousand, seven hundred twenty-eight dollars and sixteen cents ($2,728.16) in total costs.

## CONCLUSION

For the reasons stated above, Plaintiff's request for attorney's fees and costs (Doc. 109) will be granted in part and denied in part.  Plaintiff's counsel will be awarded twenty thousand dollars ($20,000.00) in attorney's fees, and Plaintiff will be awarded two thousand, seven hundred twenty-eight dollars and sixteen cents ($2,728.16) in costs.

An appropriate Order follows.


 October 9, 2008                                   /s/ A. Richard Caputo
Date                                              A. Richard Caputo
                                                  United States District Judge

25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD SMITH,

     Plaintiffs,

        v.

BOROUGH OF DUNMORE,

     Defendants.

CIVIL ACTION No. 3:05-CV-1343

(JUDGE CAPUTO)

<u>ORDER</u>

     **NOW**, this  9th  day of October 2008, **IT IS HEREBY ORDERED** that Plaintiff's motion for attorneys' fees and costs (Doc. 109) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    Attorney's fees for Ms. Cynthia Pollick are awarded in the amount of twenty thousand dollars ($20,000.00).

(2)    Costs are awarded in the amount of two thousand, seven hundred twenty-eight dollars and sixteen cents ($2,728.16).


                            /s/ A. Richard Caputo
                            A. Richard Caputo
                            United States District Judge