**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD SMITH, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-1343 |
| v. | (JUDGE CAPUTO) |
| BOROUGH OF DUNMORE, et al., | |
| Defendants. | |

**MEMORANDUM**

The present case is scheduled for trial on the Court's July calendar. In the interest of narrowing the issues presented for trial, the Court will invite the parties to present evidence and briefing so that it may determine, as a question of law, whether the plaintiff received due process.

**I. Background**

On May 20, 2005, the borough manager for the Borough of Dunmore asked the fire chief for a list of required qualifications for full-time firefighters and verification that each firefighter had met these requirements.  After receiving and reviewing this information, the borough manager concluded that two full-time firefighters, Edward Smith and Robert Dee, had not completed a required training course. This conclusion was presented to the borough council, which voted to suspend the firefighters with pay until a hearing could be scheduled. The firefighters received neither notice nor a hearing before they were suspended.

The suspensions began on June 28, 2005. The hearing was scheduled for July 6, 2005. As a result of the hearing, it was determined that the firefighters were not required to

complete the course pursuant to a collective bargaining agreement. The firefighters were reinstated.

One day before the hearing, on July 5, 2005, Smith and Dee each separately brought suit against the borough and its council members, bringing, *inter alia*, claims for violations of procedural due process.  The Court granted summary judgment in part in both cases on the ground that the defendants had no property interest in not being suspended. Smith and Dee each appealed, and the Third Circuit reversed on the due process claims, holding that as a matter of law, 53 Pa. Stat. Ann. § 46190 and the collective bargaining agreement give rise to a property interest in not being suspended without cause. *Dee v. Borough of Dunmore*, 549 F.3d 225, 231–32 (3d Cir. 2008); *Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011).

The court of appeals further held that Dee and Smith have constitutionally cognizable liberty interests in their reputations because they suffered the deprivation of their property interests in not being suspended without cause. *Dee*, 549 F.3d at 234–35; *Smith*, 633 F.3d at 180.

Because fact issues remained regarding the borough's justification for suspending Smith, whether he had suffered "stigma," and whether the July 6th hearing was a constitutionally adequate name-clearing hearing, the court of appeals remanded Smith's due process claims to this court for consideration of the *Mathews v. Eldridge* factors once the issues of fact were decided.

2

## II. Discussion

**A. Due Process Standard**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1975). Here, because Smith has a property interest in not being suspended without just cause, due process applies.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In *Mathews v. Eldridge*, the Supreme Court explained that "[d]ue process if flexible and calls for such procedural protections as the particular situation demands," which requires "analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334 (internal citations omitted). Identifying what process is due "generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. The *Mathews* balancing test is to be applied by the court, as a question of law, and *not* by a jury. *See Graham v. City of Philadelphia*, 402 F.3d 139, 146 (3d Cir. 2005) ("A court must balance these factors to determine what type of procedures would assure fairness in a particular case."); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991), *overruled on other grounds by United Artists Circuit, Inc. v. Twp. of Warrington*,

316 F.3d 392 (3d Cir. 2003) ("But a court, not a jury, should decide whether the licensing scheme satisfied procedural due process"); *Stauch v. City of Columbia Heights*, 212 F.3d 425, 431 (8th Cir. 2000) ("[T]he question of whether the procedural safeguards provided for . . . are adequate to satisfy due process is a question of law for the court to determine.") (citing *Midnight Sessions*); *League of United Latin Am. Citizens*, 986 F.2d 728, 772 n.30 (5th Cir. 1993) (noting that in constitutional areas such as substantive due process and equal protection "the weight of an asserted state interest has always been resolved by the court as a legal question."); *Downing v. Williams*, 624 F.2d 612, 617 (5th Cir. 1980) (noting that on a procedural due process claim, a jury cannot make determinations of law such as whether "adequate" notice was provided because such "determinations of how constitutional standards are to be applied to the case at hand can only be made by the judge since they are questions of law"), *vacated on other grounds by Downing v. Williams*, 645 F.2d 1126 (5th Cir. 1981).

**B. Applying These Standards to Smith's Property Claim**

In general, courts have "consistently [ ] held that some form of hearing is required before an individual is *finally* deprived of a property interest." *Mathews*, 424 U.S. at 333 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974) (emphasis added)).  However, the extent to which pre-deprivation hearings of some sort must be provided, and the specific procedures due, is relatively underdeveloped jurisprudential territory.

In *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), the Court held that a public employee terminable only for cause was entitled to a very limited pre-termination hearing, to be followed by a more elaborate post-termination hearing.  In holding that some

pre-termination notice and opportunity to be heard was required, it was relevant to the Court that no hazard or emergency existed that would have heightened the governmental interest in immediate termination without a hearing. *Id.* at 544–45 & n.10.  In the case when an "employer perceives a significant hazard in keeping the employee on the job," the Court noted that "it can avoid the problem by suspending with pay." *Id.*  The Court stressed that the pre-termination hearing required was very informal; the employee is "entitled to oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. This informal pretermination hearing serves as "an initial check against mistaken decisions" and "need not definitively resolve the propriety of the discharge." *Id.* at 545.

*Loudermill* is not exactly on-point here, because in that case the Court confronted a dismissal, as opposed to a suspension.  The Court revisited the issue of pre-disciplinary hearings in the employment context in the case of *Gilbert v. Homar*, 520 U.S. 924 (1997). The Court applied the *Mathews v. Eldridge* balancing test to a state university employee's suspension without pay, following his arrest on drug-related charges, without receiving prior notice or hearing.  Although the Court acknowledged the significance of depriving a worker of pay, it emphasized that "in determining what process is due, account must be taken of 'the *length*' and '*finality* of the deprivation." *Gilbert*, 520 U.S. at 932 (citing *Logan*, U.S. at 434) (emphasis in *Gilbert*).  The Court stressed that the university employee faced only a *temporary suspension* without pay and that "[s]o long as the suspended employee receives a sufficiently prompt post-suspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often

5

not affected at all." *Id.* Where the state has a significant interest in immediately suspending "employees who occupy positions of great public trust and high public visibility" when felony charges are filed against them, and provides an "adequately prompt post-suspension hearing," due process is not violated by suspending such employees without pay and without prior notice or hearing. *Id.* at 932–35.

In *Schmidt v. Creedon*, the Third Circuit recently considered the case of a police officer,[1] suspended without pay, without a prior hearing. *Schmidt v. Creedon*, __ F.3d __, 2011 WL 1461235 (3d Cir. Apr. 18, 2011). The court concluded that "absent extraordinary circumstances" an informal opportunity to be heard prior to suspension without pay was required by due process. *Id.* at *7–8. However, because the plaintiff's right to a pre-suspension hearing was not clearly established, the defendants were entitled to qualified immunity on the due process claim. *Id.* at *9.

Here, Smith's situation appears to lie somewhere between *Gilbert* and *Schmidt*. The government's interests here are not as significant as those in *Gilbert*—the interest in removing a firefighter who appears to lack some amount of training is less weighty than the interest in immediately removing an employee with pending felony charges. On the other hand, the plaintiff's interests here are considerably less significant than those in either *Gilbert* or *Schmidt*—both of those cases dealt with employees who were suspended *without* pay, while Smith was suspended *with* pay, a comparatively minor deprivation. Indeed, the Third Circuit strongly signaled that if the council members were motivated by public safety, no pre-

---

[1] The court of appeals noted that the police officer had a property interest under Pennsylvania's Civil Service Act, 53 Pa. Stat. Ann. § 46190, in not being suspended without just cause. This same statutory provision creates Smith's entitlement to not being suspended without just cause.

deprivation process was due Smith. *See Smith*, 633 F.3d 176, 180 ("We emphasize, however, that we are not suggesting that concerns over public safety cannot justify a paid eight-day pre-hearing suspension. To the contrary, we recognize that the strong government interest in public safety would almost certainly justify the comparatively minor deprivation inherent in an eight-day paid suspension.")

Additionally, if the defendants continue to raise qualified immunity, as they did in their motion for summary judgment, the right to a hearing before suspension with pay does not appear to be clearly established even where public safety concerns are absent. *Cf. Schmidt*, 2011 WL 1461235, at *9.

The parties should submit evidence and briefing on the issue of whether the failure to provide a pre-suspension hearing violated Smith's due process rights and raise any affirmative defenses at that time.  This will enable the Court to narrow any genuine issues of material fact so that these may be presented to the trier.

**C. Applying These Standards to Smith's Liberty Claim**

In itself, impairment of reputation is not an a constitutionally cognizable injury; rather, "[t]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Dee*, 549 F.3d at 233–34 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)). The Third Circuit held that Smith has met the "plus" prong, and remanded for consideration of whether he suffered "stigma." *Smith*, 633 F.3d at 180–81. In order for Smith to "satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false." *Dee*, 549 F.3d at 235 (quoting *Hill*,

7

455 F.3d at 236).  The statements must also be stigmatizing; that is, they must "call into question [Smith's] 'good name, reputation, honor, or integrity'" or "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (internal citations omitted). In other words, the "false statements must harm the plaintiff." *Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996). "In constitutional jurisprudence, stigmatization is a term of art," *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011), and encompasses statements that falsely accuse a plaintiff of serious wrongdoing, *Jennings v. Owen*, 602 F.3d 652, 658 (5th Cir. 2010).  In the employment setting, statements that "seriously damage [the employee's] standing and associations in his community" or "impose on [him] a stigma . . . that foreclose[s] his freedom to take advantage of other employment opportunities" can stigmatize. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Tibbetts v. Kulongoski*, 576 F.3d 529, 536 (9th Cir. 2009) (quoting *Roth*).

Assuming Smith suffered stigma, the Court must next consider whether he was denied due process of law.  In the event that Smith showed he was stigmatized, the Third Circuit instructed this Court to apply the *Mathews v. Eldridge* balancing test to determine whether the July 6th hearing was a constitutionally sufficient name-clearing hearing. *See Dee*, 549 F.3d at 235 n.12 ("Should [the plaintiff] be able to satisfy the 'stigma' prong of the 'stigma plus' test, *Mathews v. Eldridge* balancing would again be in order; this time to determine whether the Council's July 6th hearing was constitutionally sufficient.")

Where a plaintiff has a stigma-plus claim, the appropriate remedy is "a post-

deprivation name-clearing hearing." *Graham v. City of Philadelphia*, 402 F.3d 139, 144 (3d Cir. 2005) (citing *Patterson*, 370 F.3d at 335). In such a situation, all that is required by due process is "an opportunity to refute the charge . . . to provide the person an opportunity to clear his name." *Codd v. Velger*, 429 U.S. 624, 627 (1977).

Here, the parties should file briefing and evidence with the Court addressing the presence or absence of stigma, and whether the July 6th hearing comported with due process. In addressing the issue of stigma, the parties should focus on (1) whether publicly false statements were made about Smith; (2) if so, whether the statements were stigmatizing. This inquiry requires consideration of whether the publication was "substantially and materially false," *see Ersek*, 102 F.3d at 83–84, and "caused [Smith] harm that a name-clearing hearing could correct," *see id.* at 85. In addressing the issue of the constitutional sufficiency of the hearing, the parties should focus on whether Smith was given the opportunity to refute the charge and clear his name in accordance with the requirements of *Mathews v. Eldridge*.

### III. Conclusion

The parties will be given twenty-one days from the date of this opinion to supply supplemental briefs and exhibits on whether Smith's due process rights were violated. In doing so, they should follow Local Rule 56.1, including the submission of a separate concise statements of material fact. Facts not controverted by an opposing statement, as called for by Local Rule 56.1, will be deemed admitted. The parties may then respond and reply to each other's submissions in accordance with Local Rules 7.6 and 7.7.

Should genuine issues of material fact preclude judgment as a matter of law, the

Court will submit these issues for determination to a jury under Federal Rule of Civil Procedure 49.  The Court will then determine, as a question of law, whether Smith received due process.

April 22, 2011                                           /s/ A. Richard Caputo  
Date                                                      A. Richard Caputo  
                                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD SMITH,  Plaintiff  v.  BOROUGH OF DUNMORE, et al.,  Defendants. | NO. 3:05-CV-1343  (JUDGE CAPUTO) |

### **ORDER**

**NOW**, this 22nd day of April, 2011, **IT IS HEREBY ORDERED THAT** the plaintiff and defendants have twenty-one (21) days from the date of this order to file supplemental briefs and exhibits, in accordance with this opinion, on the issue of whether Smith was denied due process of law, suffered stigma, and received a constitutionally adequate name-clearing hearing.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge