**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD SMITH,

      Plaintiff,

          v.

BOROUGH OF DUNMORE, et al.,

      Defendants.

CIVIL ACTION NO. 3:05-CV-1343

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is plaintiff Smith's motion in limine to require news reporter Matthew Kemeny to reveal his source. (Doc. 151.)  In the alternative, plaintiff Smith moves for permission to take an interlocutory appeal on the reporter's privilege issue.  For the reasons stated below, both motions will be denied.

### BACKGROUND

On May 20, 2005, the borough manager for the Borough of Dunmore asked the fire chief for a list of required qualifications for full-time firefighters and verification that each firefighter had met these requirements.    After receiving and reviewing this information, the borough manager concluded that two full-time firefighters, Edward Smith and Robert Dee, had not completed a required training course.  This conclusion was presented to the borough council, which voted to suspend the firefighters with pay until a hearing could be scheduled.  Once the decision to suspend the firefighters had been made, the borough manager sent a letter to the fire chief on June 28th, informing him of the suspension and of the scheduled hearing. The firefighters received neither notice nor a hearing before they were suspended.

The suspensions began on June 28, 2005 and the hearing was scheduled for July 6, 2005.  On June 30, 2005, after receiving a copy of the borough manager's June 28th letter to the fire chief, The Times-Tribune, an area newspaper, published a story by reporter Kemeny entitled "Firefighters suspended for not completing required training."  The article named Dee and Smith as the firefighters with incomplete training records.  At the July 6th hearing it was determined that, in accordance with the collective bargaining agreement, the firefighters were not required to complete the subject training.  The firefighters were then reinstated.

One day before the hearing, on July 5, 2005, Smith and Dee each separately brought suit against the borough and five of the seven council members, bringing, *inter alia*, claims for violations of procedural due process.  The Court granted summary judgment in part in both cases on the ground that the defendants had no property interest in not being suspended. Smith and Dee each appealed, and the Third Circuit reversed on the due process claims, holding that as a matter of law, 53 Pa. Stat. Ann. § 46190 and the collective bargaining agreement give rise to a property interest in not being suspended without cause. *Dee v. Borough of Dunmore*, 549 F.3d 225, 231–32 (3d Cir. 2008); *Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011).  The court of appeals further held that Dee and Smith had constitutionally cognizable liberty interests in their reputations because they suffered the deprivation of their property interests in not being suspended without cause. *Dee*, 549 F.3d at 234–35; *Smith*, 633 F.3d at 180.

The court of appeals remanded both cases on the grounds that there were fact issues regarding the borough's justification for suspending Smith and Dee, whether they had suffered "stigma," and whether the July 6th hearing was a constitutionally adequate

2

name-clearing hearing.  Dee's case went to trial in January 2010.  At trial, when questioned

about how he obtained a copy of the June 28th letter, reporter Kemeny testified that it had

been provided by "someone at Dunmore" but refused to reveal the name of his source,

invoking Pennsylvania's Shield Law, which protects journalists from having to reveal

confidential sources.  Previously, while being deposed, Kemeny had similarly invoked the

privilege under state law as well as the First Amendment.  Additionally, while there was

testimony at trial that a copy of the letter had been provided to all seven council members,

among others, plaintiff Dee only questioned the five council members named in both

complaints about leaking the letter – all of whom denied being Kemeny's source.

Jury trial in Smith's case was set for July 5, 2011.  On April 15, 2011, Smith filed the

instant motion in limine. (Doc. 151.)  Smith argues that  reporter Kemeny should be

required to reveal his source because that information is a crucial link in establishing his

procedural due process liberty\reputation claim under the Fourteenth Amendment  and

there is no other way for him to obtain this information.  Alternatively, if the Court rules

against him, Smith moves for the Court to allow an interlocutory appeal.  The motion has

been fully briefed by both sides and is ripe for review.

## DISCUSSION

### I.      Motion to Order Reporter Kemeny to Reveal Source

Plaintiff's motion in limine to require reporter Kemeny to reveal his source will be

denied because plaintiff has failed to meet the requirements to overcome the "reporter's

privilege."

Plaintiff seeks the name of the source to establish his procedural due process

liberty\reputation claim, which is governed by the "stigma plus" test.  "To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).  This is usually referred to as the "stigma-plus" test. *See, e.g., Hill*, 455 F.3d at 236.  Here, having found that Smith had stated a sufficient "plus," the Third Circuit remanded to this Court the determination of whether Smith has satisfied the "stigma" prong of the analysis. *Smith*, 633 F.3d at 184.  In order to satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false. *Dee*, 449 F.3d at 235 (quoting *Hill*, 455 F.3d at 236).  The statements must also be stigmatizing; that is, they must "call into question [Smith's] 'good name, reputation, honor, or integrity'" or "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (internal citations omitted). In other words, the "false statements must harm the plaintiff." *Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996).  If plaintiff can establish that one of the defendants made the June 28th letter public by leaking it to the press, he will have established the first part of the "stigma" test.

Moving next to the law surrounding a reporter's privilege, Federal Rule of Evidence 501 states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the

common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Therefore, since the Court is dealing with a Fourteenth Amendment claim brought under 42 U.S.C. § 1983, federal common law rather than state law will control.  In *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972), the United States Supreme Court acknowledged the existence of First Amendment protection for "newsgathering".  In *Riley v. City of Chester*, the Third Circuit, reviewing *Branzburg*, the "strong" public policy supporting the "unfettered communication to the public of information, comment and opinion," as well as Pennsylvania's Shield Law, 42 Pa. C.S. § 5492 – which prevents reporters from having to reveal their sources – held, "journalists have a federal common law privilege, albeit qualified, to refuse to divulge their sources." 612 F.2d 708, 715 (3d Cir. 1979).  The plaintiff in *Riley*, a mayoral candidate suing the city, sought the identity of a reporter's source for an article written by the reporter about the plaintiff's record as a police officer.  The *Riley* court went on to state, "[t]he interrelationship between newsgathering, news dissemination and the need for a journalist to protect his or her source is too apparent to require belaboring.  A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis." *Riley*, 612 F.2d at 714.  In weighing the privilege in particular circumstances, the court of appeals held the trial court, "must balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand." *Riley*, 612 F.2d at 716.  Weighing the need in that case, the

court stressed the importance of consideration of the *circumstances* in which the issue arose:

> This is not a case where the reporter witnessed events which are the subject of grand jury investigations into criminal conduct. *See e. g., Branzburg v. Hayes, supra*. This is not a situation where the reporter is alleged to possess evidence relevant to a criminal investigation. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). This case does not place in apposition the journalist's privilege and the constitutional right of a criminal defendant to be afforded every reasonable opportunity to develop and uncover exculpatory information. *See e. g., New York Times Co. v. Jascalevich*, 439 U.S. 1317, 99 S.Ct. 6, 10, 58 L.Ed.2d 25 (1978) (White J., in chambers). This is not a case where a reporter waived the privilege by filing suit to vindicate his own rights. *See, e. g., Anderson v. Nixon*, 444 F.Supp. 1195 (D.D.C.1978). Nor is this a situation in which the journalist and/or publisher are defendants in a suit brought for damages caused by publications alleged to have contained knowing or reckless falsehoods. *See, e. g., Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). *This is simply a situation where a journalist has been called as a witness to a civil suit in which neither she nor her employer has any personal interest.*

*Id.* at 716 (emphasis added).  Finding that the privilege applied in those circumstances, the *Riley* court went on to hold:

> In striking the delicate balance between the assertion of the privilege on the one hand and the interest of either criminal or civil litigants seeking the information the materiality, *relevance* and *necessity* of the information sought must be shown. . . All courts which have considered this issue have agreed that the federal common law privilege of news writers shall not be breached without a *strong showing* by those seeking to elicit the information that there is *no other source* for the information requested.

*Id.* (internal citations omitted) (emphases added.)

Applying this framework in the wake of *Riley*, it has been well-established in the Third Circuit that the "reporter's privilege" can only be overcome when the following requirements are met: (1) the information sought is material, relevant, and necessary; (2) there is a strong showing that it cannot be obtained by alternative means; and (3) the

information is crucial to the party's case. *See, e.g., Kitzmiller v. Dover Area Sch. Dist.*, 379 F.Supp. 2d 680, 685 (M.D. Pa. 2005) (citing *Riley*, 612 F.2d at 716).

Here, the information sought is clearly relevant to plaintiff's procedural due process liberty claim and would establish who made the letter public for purposes of satisfying the "stigma" test.  Therefore, requirements (1) and (3) have been met.  However, plaintiff has failed to show that the information cannot be obtained by alternative means.  Notably, the two council members that were not named in the complaint have never been questioned to determine whether they leaked the letter to Kemeny.  Indeed there has been no showing that all of those with access to the information were queried on the issue.

More basically, adhering to *Riley*'s emphasis on considering the circumstances in which the privilege arises, plaintiff has not demonstrated that his need for the material outweighs the strong and compelling public policies supporting the privilege.  The strong public policy considerations of promoting the free communication to the public of information, as well as protecting the very idea of a "free press" at a time when that notion is under increasing assault, weigh heavily against revoking the privilege in these circumstances, circumstances significantly similar to *Riley*.  Like *Riley*, this case is civil and not criminal, and therefore does not require that the Court, for instance, weigh the reporter's privilege against a defendant's constitutional right to exculpatory evidence. Again, like *Riley*, the reporter here is not party to the suit, and neither he nor his employer have any personal interest in its outcome.  As a result, the public policies underlying the privilege significantly outweigh the need for the release of the information, and  Plaintiff's motion will not be granted.

**II.     Motion for Leave to File Interlocutory Appeal**

Plaintiff's motion in limine for leave to file an interlocutory appeal on the privilege question will be denied.

A court may certify a non-final order for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) the order "involves a controlling question of law," (2) "a substantial ground for difference of opinion" exists with regard to the issue involved, and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Simon v. United States*, 341 F.3d 193, 199 (3d Cir.2003).  The certification decision rests with the discretion of the district court, and the court may decline to certify an order even if the parties have satisfied all elements enumerated in the statute. *Knipe v. SmithKline Beecham*, 583 F.Supp. 2d 553, 599 (E.D. Pa.2008).

Here, plaintiff has failed to establish that the requirements for certification have been met.  Most essentially, plaintiff has not shown a substantial ground for difference of opinion over the issue of the reporter's privilege.  The Third Circuit has consistently applied *Branzburg* and *Riley* in dealing with the privilege, and plaintiff does not point to any opposing case law.  Therefore, employing its discretion, the Court will not grant plaintiff leave to file an interlocutory appeal on this issue.

## CONCLUSION

For the reasons stated above, plaintiff's motion in limine to have the court order reporter Kemeny to reveal his source will be denied.  Plaintiff's motion in limine for

certification on this issue for an interlocutory appeal will also be denied.  An appropriate order follows.

 5/27/11                                                               /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD SMITH,

    Plaintiff

        v.

BOROUGH OF DUNMORE, et al.,

    Defendants.

NO. 3:05-CV-1343

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this __27th__ day of May, 2011, **IT IS HEREBY ORDERED THAT** plaintiff's motion in limine to have the Court require the release of reporter Kemeny's source (Doc. 151) is **DENIED**.  Plaintiff's motion in limine for leave to file an interlocutory appeal is also **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge