IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD G. SMITH, | CIVIL ACTION NO. 3:05-CV-1343 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| BOROUGH OF DUNMORE, BOROUGH OF DUNMORE COUNCIL, and JOSEPH LOFTUS, THOMAS HENNIGAN, JOSEPH TALUTTO,[1] FRANK PADULA, LEONARD VERRASTRO, and MICHAEL CUMMINGS, *individually and as Councilmen*, | |
| Defendants. | |

**MEMORANDUM**

The present case is scheduled for trial on the Court's November calendar. After the identifying to the parties several areas where summary judgment might be appropriate, the Court invited the parties to present evidence and briefing upon these issues. The evidence and briefs presented by the parties establish that, as a matter of law, Smith received due process and a constitutionally adequate name-clearing hearing.[2] Therefore, summary judgment will be granted to the Defendants.

---

[1] Mr. Talutto has passed away since the filing of this suit.

[2] Although the parties also briefed the issue of qualified immunity, it was unnecessary to address the issue because Smith's constitutional rights were not violated.

## I. Background

**A. Factual History**

The facts as presented in Defendants' statement are as follows:[3]

Plaintiff Edward G. Smith was, at all times relevant to this action, employed full time as a Captain with the Borough of Dunmore Fire Department. (Def. Stmt., Doc. 153 ¶ 2.) Smith was appointed as a firefighter with the Borough in 1988; prior to that, he worked there for five years in the "active reserve." (Trial Tr., 114:18-23, Oct. 30, 2007, ECF No. 143.) The Borough of Dunmore and the firefighters' Local Union 680 are bound by a collective bargaining agreement that states that the power to "hire, classify, promote, suspend, [and] discipline or discharge for just cause" and "determine the safest and most efficient means and methods for conducting the [Fire] Department" are vested in the Borough. (Def. Stmt. ¶ 10-11.)

Defendant Joseph Loftus, the Borough Manager, began investigating the certification of the employees of the Fire Department on May 20, 2005. (*Id.* ¶ 13.) He instructed the Chief of the Fire Department to send him a memo outlining the necessary qualifications and certifications for full-time firefighters and documentation showing that the staff met those qualifications and certifications. (*Id.*) Chief Vince Arnone responded on May 23, 2005,

---

[3] Because Smith violated Local Rule 56.1, Defendants' statement of material facts will be deemed admitted. *See Robinson v. Consol. Rail Corp.*, 668 F. Supp. 2d 678, 683 n.2 (M.D. Pa. 2009). Local Rule 56.1 dictates that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [of the movant], so as to which it is contended that there exists a genuine issue to be tried." This statement must "include references to the parts of the record that support the statements." Smith violated this rule by neglecting to include a citation to the record in all but one of his paragraphs. Nevertheless, I will consider the facts asserted in Smith's brief so that there can be a ruling on the merits of the case.

2

advising Loftus of the five necessary qualifications and certifications for full-time firefighters. (*Id.* ¶ 16.) Chief Arnone later sent Loftus a note indicating that Smith did not have the required Fire Academy Training. (*Id.* ¶ 18.)

Loftus presented the documentation to the Borough of Dunmore Council, who determined that Smith had failed to complete training required under the collective bargaining agreement. (*Id.* ¶ 24.) Defendants Thomas Hennigan, Leonard Verrastro, Frank Padula, Michael Cummings, and Joseph Talutto are all members of the Council (which itself is also a Defendant). (*Id.* ¶ 6.) All Defendant council members testified that their primary concern was safety. (*Id.* ¶ 26-30.) Talutto also testified, "We don't want to get blasted in the paper." (*Id.* ¶ 30.) Talutto later clarified that statement by noting that it was based on his shock at the situation and his concerns about protecting the town. (*Id.* ¶ 31.) On June 28, 2005, Loftus sent a memo to Chief Arnone explaining that the Council had determined that Smith had not completed all required training. (*Id.* ¶ 33.) The memo ordered that Smith be removed from the schedule, with pay, until a hearing could be held on July 6, 2005, to determine what action should be taken. (*Id.*)

On June 30, 2005, the Times-Tribune printed an article stating that Smith had been suspended for incomplete training pending a personnel hearing. (*Id.* ¶ 38.) The article's author had obtained a copy of the June 28, 2005 memo from an anonymous source. (*Id.* ¶ 37.)

Smith attended the July 6, 2005 hearing and was represented by counsel. (*Id.* ¶ 36.) At the hearing, Smith provided the Council with additional documentation that confirmed that he was in compliance with the required certifications and qualifications. (*Id.*) Based on this,

3

the Council ordered that Smith be reinstated to the schedule, noting that he did not suffer any lapse in pay, other benefit, or service time for seniority or retirement date purposes. (*Id.*) On July 7, 2005, the Times-Tribune printed an article stating that Smith had been reinstated after a hearing where Smith provided sufficient documentation of his training. (*Id.* ¶ 39.)

**B. Procedural History**

On July 5, 2005–the day before Smith's hearing–he filed a complaint against the Borough and its council members, bringing, *inter alia*, claims for violations of procedural due process. Fellow firefighter Robert Dee also filed suit that day on the same grounds against the same Defendants. The Court granted summary judgment in part in both cases on the grounds that the Plaintiffs had no property interest in not being suspended. Smith's suit then went to trial on a retaliation claim; the jury returned a verdict in favor of Smith and awarded nominal damages of $1.

Dee and Smith both appealed the granting of summary judgment to the Defendants on their due process claims.[4] The Third Circuit reversed, holding that as a matter of law, 53 Pa. Stat. Ann. § 46190 and the collective bargaining agreement give rise to a property interest in not being suspended without cause. *Dee v. Borough of Dunmore*, 549 F.3d 225, 231-32 (3d Cir. 2008)*; Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011). Dee's case went to trial, and the jury found that the Defendants had violated his due process rights. The Third Circuit remanded Smith's case to the Court to consider the fact issues

---

[4] Smith also appealed the summary judgment for the Defendants on his state claims, the judgment as a matter of law for the Defendants on the issue of punitive damages, and the partial denial of his motion for attorney fees and costs. The Third Circuit affirmed this District Court's order on these issues. *Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011).

surrounding the Borough's justification for suspending Smith, whether he had suffered "stigma," and whether the July 6 hearing was a constitutionally adequate name-clearing hearing.

On April 22, 2011, the Court issued an order giving the parties in this case twenty-one days to supply supplemental briefs and exhibits on whether Smith's due process rights were violated. The parties fully briefed the issues and the matter is ripe for disposition.

## II. Discussion

### A. Rule 56(f)(3) Judgment Independent of the Motion

As a preliminary matter, Plaintiff challenges the Court's authority to grant summary judgment in this case because Defendants did not file a motion for summary judgment under Federal Rule of Civil Procedure 56(a) or Local Rule 56.1. Neither party, however, need file a motion in order for a court to grant summary judgment. Federal Rule of Civil Procedure 56(f)(3) states, "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). The Court provided notice to the parties in its April 22 order by indicating that the case would only be presented to a jury if there were no genuine issues of material fact. The Court identified for the parties the issues to be briefed and also provided reasonable time to the parties, allowing them twenty-one days to respond. Therefore, the Court has authority

under Rule 56(f)(3) to independently consider summary judgment at this stage.

**B. Legal Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Anderson*, 477 U.S. at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *Anderson*, 477 U.S. at 256–57.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, the judge's function is not to

make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249.   Rather, the judge must simply "determine whether there is a genuine issue for trial."  *Id.*

**C. Section 1983**

Smith brings his claim under 42 U.S.C. § 1983, which states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Here, Smith bases his § 1983 claim on his Fourteenth Amendment right to procedural due process.  The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Here, Smith asserts both a deprivation of a property interest and a deprivation of a liberty interest.

**1. Due Process: Deprivation of Property**

Courts apply a two-step test to determine whether a party's due process rights

7

were violated by a deprivation of property, examining: "(1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute 'due process of law.'" *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quotations omitted) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003)). The Third Circuit has already held that Smith has a property interest in not being suspended without just cause. *Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011). Therefore, the outstanding issue is whether Smith received due process of law.[5] Smith argues that he should have received a hearing prior to his suspension with pay; Defendants argue that no pre-deprivation hearing was required in this case.

In order to identify what procedures constitute due process of law, courts examine three factors outlined by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Those factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* In applying the *Mathews* test, courts must keep in mind the general principle that "a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Schmidt v. Creedon*, 639 F.3d 587, 595-96 (3d Cir. 2011) (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009)). However, in "'extraordinary situations where some valid government

---

[5] Smith argued in his brief that because the *Dee* jury found that there was a violation of due process, Defendants are collaterally estopped from relitigating the issue. Since that brief, however, I have ruled that collateral estoppel is not appropriate in this case.

interest is at stake' it is permissible to postpone the hearing until after the deprivation has already occurred. *Dee*, 549 F.3d 225, 233 (3d Cir. 2008).

The private interest at stake is Smith's interest in not being suspended with pay for eight days. Because a paid suspension does not implicate the same economic concerns as more substantial interests in not being fired, *see, e.g.*, *Biliski*, 574 F.3d at 221, or in not being suspended *without* pay, *see Schmidt*, 639 F.3d at 596, it can be classified as insignificant. *See Smith*, 633 F.3d at 180; *Morgan v. Covington*, Nos. 09-2528, 09-4644, 2011 WL 3276012, at *8 (3d Cir. Aug. 2, 2011) (holding that a police officer's suspension with pay did not violate his due process rights). This deprivation is particularly minor given that Smith knew it would only last for eight days, as a hearing was scheduled for June 6. *See Mathews*, 424 U.S. at 341 (quoting *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975)) ("'[T]he possible length of wrongful deprivation of . . . benefits (also) is an important factor in assessing the impact of official action on the private interests.'").

Looking at the second factor, the facts demonstrate that a lack of a hearing prior to the suspension can lead to an erroneous deprivation: here, Smith was suspended without just cause. And it seems apparent that a pre-deprivation hearing could well have prevented the deprivation of his interest. All that was necessary to clear up the mistake was for Smith to provide some documentation, and that easily could have been accomplished at a pre-deprivation hearing.

An analysis of the third factor, the government interests in this case, is more complicated because the Third Circuit determined in *Smith* that there was a genuine issue of material fact as to whether public safety concerns were the actual motivation behind Defendants' suspension of Smith without a hearing. 633 F.3d at 181. Smith

9

argues that Defendant Talutto's statement that he was concerned about "getting blasted in the paper" proves that the Council proves that Defendants cannot claim that they acted out of an interest in safety. Defendants, on the other hand, point out that all the other council members testified that they were motivated by safety concerns, and that Talutto later clarified his prior statement and explained that he was concerned for the town's safety. Smith, of course, questions the veracity of the council members' testimony and argues that the suspension of firefighters actually jeopardized public safety. This dispute of credibility creates a genuine issue of material fact as to whether the Council was motivated by public safety or avoiding bad publicity.

Summary judgment is still appropriate, however, because Smith's deprivation was so trivial that it would be outweighed by either government interest. If the Council suspended Smith for public safety reasons, that would make the government interest in this case quite significant. Because of the dangerous work performed by firefighters, it is imperative that the government be certain that these employees have had full and proper training. The Borough could reasonably determine that reducing the number of firefighters during the suspension period created fewer safety concerns than allowing the firefighters to work without proper training. Public safety concerns would trump Smith's interest in avoiding a paid suspension, even despite the potential value of a pre-deprivation hearing in preventing the deprivation. The Third Circuit indicated the likelihood of this outcome when it considered the case. *See Smith*, 633 F.3d at 180-81 ("[T]he strong government interest in public safety would almost certainly justify the comparatively minor deprivation inherent in an eight-day paid suspension."). The analysis is similar if the Council acted in order to avoid bad publicity. A government's

10

interest in avoiding negative press coverage is far less significant than an interest in public safety, but it is legitimate–especially because here, the negative press would be inextricably linked with public safety issues.  A news story about how the Council had voted to continue letting firefighters work despite insufficient training might have caused public concerns for safety and diminished confidence in the Council's leadership.  Even considering the potential benefits of additional process, the government interest here outweighs Smith's negligible interest in avoiding such a minor deprivation.

This is not to say that avoiding a paid suspension could never be a significant interest under any circumstances.  But here, Smith did not lose any benefit, nor any service time for seniority or retirement date purposes.  He only had to wait eight days before his hearing.  In essence, Smith suffered no concrete harm.  Because the government had a strong interest in both public safety and avoiding negative publicity on the issue of public safety, and Smith's deprivation was extremely minor, this qualifies as an extraordinary situation where it was permissible to postpone the hearing until after the deprivation.  Therefore, summary judgment will be granted to the Defendants on the issue of Smith's property deprivation.

### 2. Due Process: Deprivation of Liberty

A plaintiff asserting a due process violation based on a deprivation of liberty is required to establish both "a stigma to his reputation *plus* deprivation of some additional right or interest" in order to succeed.  *See Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008).  This is called the "stigma-plus" test.  *Id.* at 234.  If a plaintiff can establish "stigma-plus," the court must then apply the *Mathews* factors again.  *Id.* at 235 n.12.  The Third Circuit held that the deprivation of Smith's property interest in not being

suspended without just cause satisfied the "plus" prong.  *Smith*, 633 F.3d at 180-81.  To satisfy the "stigma" prong of the stigma-plus test, the plaintiff must show that the defendant publicized false statements about him and that those false statements caused harm to his "reputation, honor, or integrity."  *Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996) (citing *Codd v. Velger*, 429 U.S. 624, 627-29 (1977); *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 82 (3d Cir. 1989)).  "The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name."[6]  *Id.*; *see also Bd. of Regents v. Roth*, 408 U.S. 564, 572 and n.12 (1972); *Hill v. Borough of Klutztown*, 455 F.3d 225, 236 (3d Cir. 2006); *Graham v. City of Phila.*, 402 F.3d 139, 144 (2005).  A plaintiff need not request the name-clearing hearing in order to assert his claim.  *Hill*, 455 F.3d at 239 n.19 (citing *Ersek*, 102 F.3d at 84 n.8).

Here it is unnecessary to determine whether Smith can establish stigma, because even if he had, the record clearly indicates that he received a name-clearing hearing that satisfied constitutional requirements.  To determine whether a post-deprivation hearing provides the name-clearing required to constitute due process under the law, a court must balance the *Mathews* factors.  *Graham*, 402 F.3d at 145-46 (citing *Mathews*, 424 U.S. at 335).  Looking at the first factor, Smith has a significant interest is in protecting his reputation so that future employment opportunities are available to him.  In examining the

---

[6] Smith argues that he is entitled to damages on his claim, but the Third Circuit has not yet determined whether damages are an appropriate remedy for a due process violation under the stigma-plus doctrine, *see Hill v. Borough of Klutztown*, 455 F.3d 225, 236 n.15 (2006); *Ersek*, 102 F.3d at 84 n.6.  Without any precedent establishing the availability of a damages remedy or delineating the standards for its application, it is inappropriate to apply it in this case.

second factor, there is very little risk that Smith's reputation would erroneously remain tarnished after the hearing held by the Council.  Smith attended the hearing, was represented by counsel, heard the allegations regarding his training, and was given the opportunity to refute those allegations, which he did by providing the relevant documentation.  It is difficult to think of any additional or substitute procedure that would have done a better job of clearing Smith's name.  Finally, the third factor requires consideration of the government's interest.  Here, the Borough has a significant interest in "conserving public resources" and "preserving its officials' ability to make personnel decisions."  *See Graham*, 402 F.3d at 147.

Balancing the *Mathews* factors results in the conclusion that the June 6 hearing served the purpose of clearing Smith's name, thus providing Smith with any relief he would be entitled to under the Due Process Clause.  Although Smith had a significant interest in his reputation, there is no reason that any procedure beyond the June 6 hearing is necessary to cure the injury to his reputation.  Further, the government interests weigh against wasting resources on further hearings or any additional procedure.  Smith argues that the Borough needed to acknowledge its error by issuing a press release or making a statement to the newspaper and that all Borough members needed to attend the hearing. But Smith received public acknowledgment that the suspension was an error: the Council reinstated Smith at the hearing based on the documentation, and the newspaper reported on the reinstatement, clarifying that Smith had all required training. Because "the Due Process Clause only provides the *minimum* process to which a public employee is entitled," *Stone v. FDIC*, 179 F.3d 1368 (Fed. Cir. 1999) (emphasis added), an additional statement by the Council or attendance by all

council members is unnecessary.  Smith has received a name-clearing hearing, and thus even if he could establish stigma, he would not be entitled to further relief.  The Defendants are therefore entitled to summary judgment on Smith's liberty interest claim.

### III. Conclusion

For the reasons explained above, summary judgment will be granted to the Defendants on both claims.  An appropriate order follows.


 September 23, 2011                                          /s/ A. Richard Caputo
Date                                                                     A. Richard Caputo
                                                                               United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD SMITH,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF DUNMORE, BOROUGH OF DUNMORE COUNCIL, and JOSEPH LOFTUS, THOMAS HENNIGAN, JOSEPH TALUTTO, FRANK PADULA, LEONARD VERRASTRO, and MICHAEL CUMMINGS, *individually and as Councilmen*,<br><br>Defendants. | CIVIL ACTION NO. 3:05-CV-1343<br><br>(JUDGE CAPUTO) |

**<u>ORDER</u>**

**NOW**, this 23rd day of September, 2011, **IT IS HEREBY ORDERED** that:

(1) Summary judgment is **GRANTED** to the Defendants.

(2) Judgment shall be entered in favor of the Defendants and against the Plaintiff.

(3) The clerk of court is directed to mark this case **CLOSED**.

    /s/ A. Richard Caputo
    A. Richard Caputo
    United States District Judge